No. 34,737

SADIE BIBY, *Appellant*, v. THE CITY OF WICHITA et al., *Appellees*.

(101 P. 2d 919)

982

Opinion filed May 4, 1940.

*Clarence R. Sowers* and *Claude E. Sowers,* both of Wichita, for the appellant.

*Vincent F. Hiebsch* and *K. W. Pringle,* both of Wichita, for the appellees.

The opinion of the court was delivered by

HOCH, J.: This was an action to recover damages for personal injuries. The plaintiff alleged that she was injured as the result of a fall on a public sidewalk in Wichita, her fall being caused by catching her heel on the edge of a flat piece of steel which was lying loose upon the sidewalk.

The original parties defendant were the owner of the building which abutted the sidewalk, the lessee and occupant of the building, and the city of Wichita. Prior to trial the plaintiff agreed to withdraw the action as against the lessee and occupant. At the close of plaintiff's evidence, the court sustained separate demurrers by the owner of the building and by the city of Wichita. Appeals were taken as to both defendants, but the appeal as to the owner of the building was subsequently dismissed. The appeal now ·before us is from the order sustaining the city's demurrer.

We are met at the outset by the contention of appellee that no question is presented for review owing to the failure of appellant to include in her abstract a "specification of errors complained of, separately set forth and numbered" as required by rule five of this court. It may be frankly admitted that there has been a good deal of leniency—possibly too· much—in the enforcement ·of this rule. That fact supplies the only apparent basis for complaint if the instant appeal were dismissed for failure to comply with the rule. The rule is based on sound considerations. Appellees have a right to be definitely informed as to the precise grounds upon which reversal or modification is sought. More than that, it is no part of the duty of courts of review to search out errors in a record. It is for the complaining parties to direct the court's attention—with no uncertainty—to the alleged errors which they contend have prejudiced their rights. In the instant case the appellant urges that while no specification of errors appears in the abstract, her brief clearly indicates that the only issue raised is whether the court erred

in sustaining the city's demurrer to her evidence, and that therefore, the failure to comply with the rule has not prejudiced the interests of the appellee. It is not, however, for appellants to decide whether harm will result from noncompliance. With considerable hesitancy, we again overlook the omission for the reason that the appellee appears to have fully understood the issue raised by the appeal. We will consider the case on its merits. It may be well to say here, however, that the next appellants who disregard the rule may not fare so well. The court may be forced to the conclusion that the only way to impress counsel with the importance of compliance is to rigidly enforce the rule.

On the evening of July 9, 1938, the plaintiff, Sadie Biby, her husband, John Biby, and her niece, Nora Cole, parked the Biby car on South Topeka avenue in Wichita and walked north on the east side of Topeka avenue past the building owned by D. R. Lauck and occupied by the Yingling Chevrolet Company as lessee. This building is located on the southeast corner of Topeka and English avenues. Traversing the sidewalk and running east and west was a drain gutter constructed to take care of water from a drain pipe which ran from the roof down the west side of the building. This drain gutter was constructed in the concrete sidewalk and was covered by a steel plate which was described by the city engineer to be approximately one-fourth inch thick, ten and one-half inches wide, and twelve feet long; the weight of the steel plate was variously estimated by witnesses to be between sixty and one hundred twenty-five pounds. The plaintiff and those accompanying her crossed this steel plate on their way north at about 7:00 or 7:30 p. m., but took no notice of it. After doing some shopping, which took them about an hour, they returned southward along the same sidewalk on their way to their car. It was still "fairly light, . . . amply light to see whatever there was to see on the walk." They were on the inside portion of the walk comparatively near the building. As they passed in front of the building the plaintiff suddenly stumbled and fell to the ground with resulting injuries alleged in the petition. The nature and extent of the alleged injuries, not being in issue here, need not be recited.

The issue presented is whether the evidence was sufficient to require the question of the city's liability to be submitted to the jury. The question being raised by demurrer, the testimony must be considered in the light most favorable to the plaintiff, and every reasonable inference indulged in her behalf.

The drain gutter was constructed in 1927 together with the sidewalk under a permit issued by the city to the owner of the building. It was built and maintained by the owner of the building. The construction of the drain gutter, covered by the steel plate, was of an approved type. The city engineer, called as a witness by the plaintiff, testified that the form of construction used was "the best type, . . . the most satisfactory and generally continuing safe type" which has been used for the purpose of carrying water from the down spout of a building across the sidewalk to the street space from the curb, in the absence of a storm sewer. He further testified that the work on this particular drain "was cleared as having been completed and inspected on July 27, 1927." Sometime prior to the instant accident the concrete curbing at the street line had become broken at the outer end of the drain gutter, thus exposing the end of the metal cover. There was testimony that on various occasions the steel plate had been found knocked out of place by cars which had been backed against it at the curb. From this fact, it is contended that the city either knew or should have known that the steel plate had frequently been knocked out of place and constituted a hazard to pedestrians. There was no testimony that the steel plate was out of place before the plaintiff fell. The only testimony concerning the position of the steel plate was that after the appellant fell, it was found lying loose on the sidewalk and diagonally across the drain gutter with the east end to the south. There was no testimony that the steel plate was tipped in any way either before or after the accident. It was lying flat on the sidewalk. Although it was still light, neither the plaintiff nor any other witness observed anything out of place before the accident occurred. The plaintiff did not testify that she caught her heel on the edge of the steel plate. She said she did not know what she caught it on. She only knew she stumbled on something and fell. However, indulging all possible presumptions in plaintiff's favor, we conclude that the jury might reasonably have inferred from the evidence that the steel plate was out of place and lying flat upon the sidewalk prior to the accident, and that she caught her heel on the edge of it. No inference, however, can properly be drawn that she stumbled in the drain gutter or against the edge of it. Such an inference would not only be wholly outside of the testimony, but would be outside the pleadings. There was no allegation that she stumbled in the uncovered drain gutter or in any way caught her heel in the gutter.

The sole allegation was that she caught her heel on the edge of the steel plate. Furthermore, there was no évidence that the steel plate was tipped at an angle so as to constitute an obstruction greater than one-fourth inch high. All the evidence indicates that the plate was lying flat upon the walk.

Assuming for the moment that the city had knowledge that the plate was frequently knocked out of place, the ultimate and sole issue becomes a very narrow one. The question is whether the presence of a flat piece of steel one-fourth inch thick lying upon the sidewalk constitutes a hazard to pedestrians sufficient to establish liability against a city in an action for damages based on negligence.

As far as the question of law here presented is concerned, the situation is precisely the same as though there had been no drain gutter, and the plaintiff had tripped upon a flat piece of steel one-fourth inch thick which was lying upon the sidewalk. Indeed, as a matter of law, we discern no essential difference between an unevenness caused by a flat piece of metal lying upon a walk and a similar unevenness existing from any other cause.

Appellant urges that factual questions of negligence are ordinarily for a jury to decide and cannot be disposed of as a matter of law. That is unquestionably true. It is also the rule, however, supported by the great weight of authority, that slight unevennesses in sidewalks, slight variances in the level of the surface, whether caused by projections, depressions, or otherwise, furnish no ground upon which to base municipal liability for negligence. Such a question was carefully considered by this court in the case of *Ford v. City of Kinsley*, 141 Kan. 877, 44 P. 2d 255. In that case the plaintiff was injured by a fall caused by stumbling on one of the cement blocks of which the sidewalk was constructed. One block was depressed below the level of the surrounding blocks with a resulting variance in the surface level of from one-half inch to five-eighths of an inch. The jury returned a general verdict for the plaintiff and specifically found in answer to special questions that the walk was not in a reasonably safe condition for ordinary use, that the plaintiff's fall was caused by stepping on the edge of the sunken block, and that the city had been negligent in permitting this condition to exist. This court, however, reversed the judgment, holding that the unevenness of the walk was so inconsiderable that it did not furnish a basis for actionable negligence against the city. In support of the decision, many quotations from textbooks and decisions from other jurisdictions were cited. Those citations need not be repeated here.

In the Ford case, *supra,* this court took special note of the case of *Evans v. City of Hutchinson,* 99 Kan. 477, 162 Pac. 342, which is one of the cases cited by appellant. In the Evans case there was a depression in a sidewalk caused by the scaling off of the cement crust over a space two feet long and six inches wide. The jury found the depth of the depression to be "about one-half inch." It was held that it could not be said as a matter of law that a city is not liable for personal injuries resulting from a fall due to a depression of such a character. It should be noted, in passing, that a depression greater than one-half inch was really involved. The opinion stated that the finding of the jury that the depression was *"about* one-half inch" could not be regarded as indicating it was not greater in some places, in view of the estimate of one witness that it was three inches. However that may be, the Evans case was specifically overruled in the Ford case, *supra,* insofar as it "is at variance with the general trend of the cases cited" in this opinion.

The rule of law laid down in the Ford case was cited with approval in *Douglas v. State Highway Commission,* 142 Kan. 222, 46 P. 2d 890, which had to do with the condition of a gravel or chat highway. The rule was definitely followed in *Moore v. Winnig,* 145 Kan. 687, 689, 66 P. 2d 372, involving a defective sidewalk.

In 119 A. L. R., beginning at page 161, will be found an exhaustive annotation concerning the degree of inequalities or variances in levels in sidewalks which make the question of liability one for the jury or for the court. More than seventy cases from various jurisdictions are cited and digested (pp. 163-168) in which it was held that the obstruction, the depression, the unevenness did not constitute a sufficient basis for submitting the question to the jury. In all these cases, we find only one where the unevenness was possibly as slight as that in the instant case, and that one involved a variance of from *one-eighth inch to two or three* inches. In twenty-six cases out of the seventy, the unevenness was more than one inch, and in thirty-five it was more than two inches. In other words, it is generally held that variances in a public sidewalk even much greater than the one involved here do not constitute a sufficient hazard to establish municipal liability for negligence. The cases cited are not confined to projections or depressions in the sidewalk itself, and there is no reason why they should be. A flat object lying upon a sidewalk would ordinarily be essentially

no different, or at least no greater a hazard, than a sharp offset of equal height in the sidewalk itself. In support of the same rule see 7 McQuillan on Municipal Corporations (2d ed., pp. 165-167) and cases cited, for instance, involving an iron grating projecting two inches above the walk; the cap of a water box three-quarters of an inch above the surface of the walk; and the removable part of a culvert one or two inches above the edge of the sidewalk.

In the same A. L. R. annotation, *supra,* are listed (pp. 168-174) about one hundred cases in which it was held that submission of the question to the jury was either required or justified. In all the list, however, we find none where the unevenness was as slight as one-quarter of an inch. We find only three where the variance was less than one inch, and practically all of the cases involved variances amounting to several inches or more.

Among the earlier cases cited by the appellant is *Street Rly. Co. v. Stone,* 54 Kan. 83, 37 Pac. 1012, wherein the city was held liable for the improper construction of a street railway track near the center of the street. The case is not persuasive here. The railway track was about four inches above the level of the street for the full extent of the rails and the crossties were so high that the carriage in which the plaintiff was riding was overturned when it struck them.

Among the later cases appellant cites is *Blankenship v. City of Caney,* 149 Kan. 320, 87 P. 2d 625, wherein it was held that the question of the city's liability was one for the jury. In that case there was part of a crosswalk over a ditch twenty-five inches deep which was made of planks narrower than the abutting brick portions of the crosswalk. The narrow portion over the ditch was not guarded in any way by handrails and was not lighted at night. The plaintiff, while proceeding cautiously along the crosswalk on a dark and rainy night, missed her footing and fell into the ditch. Obviously, such a situation is in no way comparable with the instant one.

The rule followed by this court in the Ford case and others is not only in line with the great weight of authority and particularly with the plain trend of the more recent decisions, but harmonizes with reason and common experience. To say that an unevenness as slight as one-quarter of an inch in the surface of a sidewalk— whether caused by an object lying upon the sidewalk or by a variance in the level of the sidewalk itself—is a hazard in the daytime

and nighttime which establishes actionable negligence if permitted to continue, would impose a most far-reaching and unwarranted liability upon the cities of the state. It is doubtful if a city could be found where such projections and depressions in sidewalks do not exist. An offset of one-fourth inch is certainly a very slight one. There are few brick sidewalks, for instance, that have been laid for any length of time which do not have a greater unevenness than that. This case clearly falls within the rule that slight defects, inconsiderable obstructions, furnish no basis for action against municipalities for negligence in the maintenance of public sidewalks. The demurrer of the city was properly sustained.

The conclusion already stated makes it unnecessary to consider other questions raised. The judgment is affirmed.