No. 35,675

BLANCHE M. BLANKENSHIP, *Appellee*, v. THE CITY OF KANSAS CITY, *Appellant*.

Opinion filed April 10, 1943.

*Alton H. Skinner*, city attorney, *Edwin A. Schalker, William H. Towers, William H. McHale, Joseph A. Lynch* and *James H. Barnes*, deputy city attorneys, were on the briefs for the appellant.

*Thomas H. Finigan*, of Kansas City, was on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This was an action for damages for personal injuries sustained by plaintiff from a fall on a sidewalk of the city alleged to have resulted from a hole in the sidewalk which defendant negligently had permitted to remain there. The jury answered special questions and returned a verdict for plaintiff for $1,500, on which judgment was rendered. Defendant has appealed.

The facts, concerning which there is no dispute, may be stated as follows: Orville avenue is a paved east-and-west street of Kansas City and is intersected by Tenth street. The sidewalks on the north and on the south side of Orville avenue were laid with brick. At the corner south of Orville and west of Tenth street there is a two-story brick store building fronting east, the north side of which extends west along the south side of Orville avenue. In the rear part of the building the first floor was used by cleaners, and the second floor for a residence, and at the time in question this was occupied by William F. Deckman and his wife. At the back of the brick building on the west is a frame room or entrance-way from which a stairway leads to the second floor. West of that is a space, perhaps fifteen feet, where there is no building, and then there are garages. The sidewalk inclines downward to the east. On the north side of Orville, and about a block west of Tenth, is the Lowell grade school, with school grounds and a smaller building on the east portion of the grounds known as "The Annex," which at the time in question was being used by the clerical staff of the WPA. Plaintiff lived at Piper, about ten miles from Kansas City, and for about eight months had been employed on the clerical staff of the WPA at the Annex of Lowell school. Ordinarily she ate her lunch at the building where she worked, but occasionally had some errand that took her over on Tenth street. On January 26, 1939, at the noon hour, she started to go to a grocery store. It was a clear, wintry day, with a temperature somewhat above freezing. She walked east on the sidewalk on the north side of Orville to the alley, about 150 feet west of Tenth street, then diagonally southeast across Orville, stepped up on the curb and the two or three steps across the parking and onto the sidewalk, and fell in such a way that her right leg was broken near the ankle. The place where she fell was a few feet west of the entrance to the upstairs apartment occupied by the Deckmans. Some school children on the street notified Miss Smith,

principal of Lowell school, who came to the scene. Mrs. Deckman saw plaintiff soon after she fell and went to her assistance, and a Mr. Ressel, who was driving a taxicab east on Orville, saw her fall, stopped and took plaintiff to the hospital, accompanied by Miss Smith. Plaintiff's injuries were properly treated, but she was not able to return to work until fall. We need discuss her injuries no further, since there is no contention that the verdict is excessive if plaintiff is entitled to recover.

The controversy in the case was whether there was a defect in the street which caused plaintiff to fall. In her petition plaintiff had alleged that the street was defective in that several bricks had been removed over a space a foot and a half wide to two or three feet long and a hole had been worn in the place from six to ten inches deep. In its answer defendant specifically denied that allegation, alleged that at the time of plaintiff's accident the sidewalk and street near it were covered with snow and ice, a condition brought about by the weather over which defendant had no control, and that if plaintiff fell and was injured, as she alleged, that it was brought about by her own lack of due care. No reply was filed.

Plaintiff testified that as she walked east on the north side of Orville avenue the sidewalk was perfectly dry; that as she walked diagonally across the street and approached the curbing on the south side there was some snow and ice, which were melting a little, near the curb and on the parking and sidewalk; that "in walking along, I didn't keep my eyes glued to the sidewalk"; that after stepping up on the curb she took two steps on the parking and the next step on the sidewalk and fell immediately; that she did not see the hole in the sidewalk, or she would not have stepped into it; that her injury caused intense pain; that while lying there on the walk, before persons came to help her up, she looked back and saw where she stepped there was a large hole, perhaps a foot and a half wide north and south and two to three feet long east and west, with rough bricks sticking up about the edges, and it looked to her, as she was lying there, that it was six to eight inches deep. Later she testified that as she walked across the street and stepped up on the curbing and across the parking and onto the sidewalk she was watching where she was walking, looking down and paying attention to where she stepped; that she did not see the hole in the walk; that it was partly covered by "snow and debris." The character of the debris and the amount of it were not stated.

William F. Deckman, called as a witness for plaintiff, testified that he had lived in the apartment upstairs in the brick building since sometime late in 1937; that when he moved there he noticed a place in the north side of the brick sidewalk about six or eight feet west of his entrance-way to the upstairs where some brick were out of the sidewalk, perhaps as many as six or eight bricks, 4 by 8 inches, covering a space about 14 or 16 inches square; that the depth of the depression caused by the absence of the bricks was the thickness of a brick; that soon after he moved there he filled this space with cinders, and did so once on a later occasion, but had not done so the winter of plaintiff's fall. He was not home when plaintiff fell, but was told of the incident that evening and noted that there was ice and snow on the walk, which was heavier on the south side near the building. When he went out of his entrance-way to go to the store he walked out to the street instead of on the sidewalk. He placed the depth of the depression in the walk where the bricks had been removed at the time of plaintiff's injury as not greater than the thickness of a brick. Mrs. Deckman gave similar testimony with reference to the location, area and depth of the place where the bricks had been removed. She did not see plaintiff fall, but helped pick her up, but being interested in plaintiff's welfare, did not particularly notice anything about the hole or depression in the sidewalk. When she first saw plaintiff that day plaintiff was lying on the sidewalk with her head to the west about two or three feet west of the entrance to her apartment. Neither Miss Smith nor the driver of the taxicab looked for or noticed anything about a hole or depression in the sidewalk. They were concerned with doing something to aid plaintiff. In the cross-examination of plaintiff's witnesses several photographs of the scene of plaintiff's fall and near by were offered in evidence. These were taken, some of them, within an hour after plaintiff fell, and others a little later in the afternoon. They showed that the sidewalk on the north side of Orville avenue in the block west of Tenth and the north two-thirds or more of the street were free of snow and ice and perfectly dry; that along the south edge of the street and on the parking and sidewalk there was snow and ice. The snow was not heavy on the parking where plaintiff's testimony showed she stepped upon it, but the brick in the sidewalk appeared there, as elsewhere, to be covered with ice, except where it was covered with snow on the extreme south edge of the sidewalk and near the building. The pictures show no hole in the sidewalk such as

plaintiff described, nor anything more than an unevenness of the brick, which perhaps at no place exceeded two inches.

At the close of plaintiff's evidence defendant demurred on the ground that the evidence was insufficient to establish a cause of action. This was overruled.

Appellant complains of this ruling and contends that the evidence on behalf of plaintiff (1) fails to show that the walk where plaintiff fell was defective, or if defective that the city had sufficient notice of it to render the city liable, and (2) that it affirmatively shows plaintiff was guilty of contributory negligence as a matter of law.

The legal questions applicable here are well settled in this state, and generally elsewhere, and may be stated as follows: A city's duty in respect to sidewalks is to maintain such walks in a reasonably safe condition for the use of pedestrians. A city is not required to maintain perfect sidewalks; such a requirement would place too great a financial burden upon the city. It is not an insurer of the safety of persons using its sidewalks. (*City of Atchison v. Jansen,* 21 Kan. 560, 575; *City of Emporia v. Schmidling,* 33 Kan. 485, 490, 6 Pac. 893.)

Slight defects or obstructions, or inconsiderable unevenness or variance in the surface of the sidewalk, are insufficient to establish liability of the city. See *Biby v. City of Wichita,* 151 Kan. 981, 101 P. 2d 919, and authorities there cited.

In this case plaintiff's right to recover is predicated upon the alleged negligence of the city, not in constructing the sidewalk originally but in failing to maintain it in a reasonably safe condition. Since negligence is never presumed plaintiff had the burden of proof of the alleged negligence. Where, as here, it is claimed that a sidewalk became so defective as to be unsafe for use, plaintiff must show not only the unsafe defect, but that the city had actual or constructive notice of such defect and a reasonable time in which to repair it before the occurrence of the injury for which the action was brought. See *Jansen v. City of Atchison,* 16 Kan. 358, 384; *Pleasanton v. Rhine,* 8 Kan. App. 452, 54 Pac. 512; *Holitza v. Kansas City,* 68 Kan. 157, 74 Pac. 594; *La Harpe v. Greer,* 74 Kan. 74, 76, 85 Pac. 1015; *Robison v. White City,* 77 Kan. 293, 94 Pac. 141; *Seymour v. Kelso,* 136 Kan. 543, 549, 16 P. 2d 958; 43 C. J. 1040; 25 Am. Jur. 728, 731.

Here, the sidewalk was covered with ice or snow. The testimony of each of the witnesses is to that effect. Plaintiff testified there

was snow where she stepped on the walk. However, no contention is made, on plaintiff's behalf that the city is liable because of ice and snow on the walk. In this connection see: *Evans v. Concordia,* 74 Kan. 70, 85 Pac. 813; *Speakman v. Dodge City,* 137 Kan. 823, 22 P. 2d 485, and *Fields v. City of Leavenworth,* 144 Kan. 207, 58 P. 2d 1065. We mention the fact of snow and ice being on the street only to exclude it in considering the liability of the city in this case.

In the light of these legal principles we must determine, first, whether the alleged defect in the walk, shown by the evidence, was one which created a liability on the city. This was described differently by the plaintiff and by the witnesses, William F. Deckman and wife, on whom she relied. We are not concerned with which of these descriptions is the accurate one, for it was the province of the jury and the trial court to determine that question, but we do examine them to see if either of them would render the city liable. As described by Deckman and wife, the imperfection in the walk consisted of the absence of six or eight bricks, leaving a depression 14 to 16 inches square, which at the time plaintiff fell was no deeper than the thickness of a brick. Since ordinarily the thickness of a brick is one-half its width, which the evidence in this case showed to be four inches, this would make the depression not more than two inches. Under the evidence this had existed a sufficient length of time that it might readily be held that the city had constructive notice of it; but this is not such an irregularity in the surface of a sidewalk as would make the city liable. See *Taggart v. Kansas City,* ante, p. 478, 134 P. 2d 417, and authorities there cited. Plaintiff, looking at the place where she fell, directly after her fall and while she was lying on the sidewalk, described it as being approximately one and one-half feet wide and two to three feet long and six to eight inches deep. This large a hole in the sidewalk undoubtedly would be a defect which the city would not be justified in leaving in the walk if it knew such a defect existed. However, there is an absence of any evidence to show, by the plaintiff or by any other witness, that such a defect had existed in the walk for any length of time before plaintiff fell. Neither is there any evidence of any actual notice to the city that such a defect existed in the walk, and that after receiving such notice it had a reasonable opportunity to repair it. The result is that the evidence on plaintiff's behalf disclosed no actionable defect in the walk for which the city is liable. The demurrer to the evidence should have been sustained.

In view of this holding it is not necessary for us to determine whether .the evidence disclosed plaintiff was guilty of contributory negligence as a matter of law. We speak of the matter only to clarify what appears to have been an erroneous idea not only of the plaintiff but of the trial court. At one place in plaintiff's testimony she stated, when she walked diagonally across the street and stepped up on the curbing and to the sidewalk, "I didn't keep my eyes glued to the sidewalk." Apparently plaintiff thought she was under no duty to do so, and this idea permeated to some extent the instructions given and was used as a basis by the court in harmonizing conflicting special findings of the jury. When one using a sidewalk does not know that it is out of repair or otherwise dangerous to use he is not guilty of negligence for assuming it to be reasonably safe for use; but when he knows the sidewalk is out of repair or is dangerous to use because of ice or snow upon it, or for any other reason, he cannot shut his eyes to what is before him, and he is under the duty, which people normally are, to use due care for his own safety. See *Dunfee v. City of Iola*, 92 Kan. 121, 139 Pac. 1029; *Ade v. City of Wichita*, 141 Kan. 497, 41 P. 2d 734.

Some other questions are argued in the brief, which this court has considered and concluded that in any event a new trial would have to be ordered. In view of the conclusions we have reached above it is not necessary to consider those questions, and of course it would be no kindness to the plaintiff to have a new trial if upon such a trial she could not recover.

From what has been said it necessarily follows that the judgment of the court below must be reversed with directions to sustain defendant's demurrer to plaintiff's evidence and to render judgment for defendant. It is so ordered.