No. 36,810

WILBUR A. PIERCE, *Appellant,* v. JERRY A. JILKA, an Individual doing business as MARQUETTE HOTEL, *Appellee.*

(181 P. 2d 330)

JAMES P. COLEMAN, judge pro tem.

Opinion filed June 7, 1947. 

*William S. Norris,* and *Arthur B. Dillingham,* both of Salina, argued the cause, and *Guy A. Spencer, F. C. Norton* and *H. L. Smither,* all of Salina, were with them on the briefs for the appellant.

*LaRue Royce,* of Salina, argued the cause, and *B. I. Litowich, E. S. Hampton,* and *H. H. Dunham, Jr.,* all of Salina, were with him on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, C. J.: This was an action for damages for personal injuries sustained by plaintiff, who tripped and fell over a coco fiber door mat on a sidewalk in front of the entrance to defendant's hotel, alleged to have resulted from defendant's negligence in placing and maintaining the mat on a public sidewalk. The trial court sustained a demurrer to plaintiff's evidence. Plaintiff filed a motion for a new trial, which was considered and overruled, and judgment was rendered for defendant. Plaintiff has appealed and contends the court erred, (1) in sustaining the demurrer to his evidence, and (2) in overruling his motion for a new trial and rendering judgment for defendant.

In Salina the 100 block of North Seventh street is in a business section of the city. It is paved and on the west side there is a level cement sidewalk 12 feet wide. Defendant owned a business property which abuts the sidewalk facing east. The first floor was used by the U. S. Treasury Department. Defendant operated the Marquette Hotel on the second floor. The entrance to the hotel was from the sidewalk, where there was a storm door, the top half of

which was glass, a small vestibule, and a stairway leading to the second floor. The first floor of the adjoining building on the north was used as a recreation parlor known as "The Caton Tap Room." The first floor of the adjoining building on the south was used as a similar recreation parlor. There is no contention that defendant owned the adjoining buildings or had anything to do with the businesses conducted therein. In the sidewalk near the curb was an iron plate, perhaps two feet wide by four feet long, the surface of which was level with the top of the sidewalk and the north end of which was about even with the south side of the entrance to the hotel.

Plaintiff, fifty-five years of age, lived in Salina and was employed as the foreman-janitor of a large office building in Salina known as the United building. His hours of work began at 10 o'clock p. m. Usually, in going from his home to his work, he did not go along the 100 block on North Seventh street, but occasionally did so, and then usually along the east side of the street. On the evening of December 16, 1944, he left home about 9:40 p. m. and started to walk to the United building and in doing so went south on the sidewalk on the west side of Seventh street. As he approached the Caton Tap Room some persons were on the sidewalk, some going in the building and some coming out. There were also people walking toward him who were further south on the sidewalk, and he walked south on the west side of the sidewalk near the buildings. As he passed in front of the Marquette Hotel he tripped on something and fell straight forward on the sidewalk, face downward, catching himself somewhat with his hands. He felt a twinge of pain and turned over. Persons gathered around and offered aid. An ambulance was called and he was taken to the hospital. It developed he had a broken hip and was seriously injured.

In the petition as amended the above facts are stated more in detail and it was alleged that on the evening in question, immediately in front of the main entrance to the stairway of the Marquette Hotel, plaintiff walked into and against and tripped and stumbled over a fiber door mat which extended about two feet out from the entrance on the public sidewalk, which "mat had been negligently and unlawfully placed and permitted to remain in such position by the defendant or by his agents, servants and employees engaged and employed by defendant in operating and maintaining said hotel, and with his knowledge, permission and consent"; that the

sidewalk at the place was not properly lighted and that plaintiff had no warning and could not see the mat on the sidewalk; that when plaintiff struck the mat "the edge thereof folded up and caught plaintiff's foot, thereby causing plaintiff to be thrown to the sidewalk"; that there was a large sign over the doorway to the hotel, but that the same was not lighted, and that the street light, about 80 feet north, and another about 30 feet south of the entrance to the hotel, did not illuminate the mat sufficiently to call plaintiff's attention to it; that the catching of plaintiff's foot by the mat tripped him, causing him to lose his balance and to fall; that the mat was located immediately in front of the entrance to the hotel, which entrance protruded about 13 inches from the face of the building onto the public sidewalk, and the mat was against the doorway and extended about 19 inches to the east and about 29 inches north and south; that the mat is the property of defendant and had been negligently and unlawfully placed and allowed to remain in its position in front of the doorway and on the public sidewalk by defendant in violation of a described ordinance of the city of Salina, and that the placing of the mat on the public sidewalk and permitting it to remain there constituted a public nuisance. There were further allegations pertaining to plaintiff's injuries.

The answer contained a general denial, also a specific denial that defendant, or any of his agents, servants or employees, placed the door mat described in the petition on the sidewalk in front of the entrance to the hotel, and specifically denied that prior to the accident the defendant, or his agents, servants or employees, knew the door mat was in front of the entrance to the hotel on the night of plaintiff's injuries prior to the time of the accident; that the mat was ordinarily kept in the vestibule, and that if it was on the sidewalk in front of the entrance at the time of the accident it had been placed there by parties unknown to defendant and without his knowledge and consent; that the door mat in question is an ordinary fiber door mat 18 inches wide, 24 inches long and one inch thick, and that if the same were on the sidewalk in front of the hotel it did not create an obstruction to the use of the sidewalk, nor did it create a nuisance; that no act of the defendant, his servants, agents or employees, was the proximate cause of any injuries or damage to plaintiff; that if plaintiff sustained injuries and damage described in his petition then plaintiff's negligence contributed to and caused such injuries and damage, and that any injuries or

damage sustained by the plaintiff, so far as defendant is concerned, was the result of an accident which defendant could not have foreseen and avoided.

The reply was a general denial.

At the trial plaintiff called defendant as a witness. He testified that he owned the property, as above stated, and that he employed a manager to operate it. The manager also was called and stated that he had been managing the hotel for a year and a half prior to the date of plaintiff's injury. No question was asked of either of them about the door mat. A photographer, who had taken pictures of the location a few days before the trial in September, 1946, explained the photographs, showing the location of plaintiff's building, the stairway to the hotel and the recreation parlors adjoining on the north and south.

Plaintiff testified that he had resided in Salina 27 years and had been employed for 12 years as a janitor of the United building; that on the evening of December 16, 1944, he was going from his home to his work and walking on the west side of the 100 block on North Seventh street; that when he got down in front of the Caton Tap Room there were quite a few people in front; that he was working his way through them and "kicked and tripped and fell over something and lying down there saw it was a door mat on the sidewalk directly in front of the door of the Marquette Hotel"; that he observed what he fell over. "It was an ordinary door mat. A coco fiber mat. . . . I looked to see what I fell over. I seen the mat lying there. It had moved some on the sidewalk and then the people gathered there." Someone called an ambulance. In a few minutes officers McMickell and Wickersham came, also the superintendent of the building where plaintiff worked. He noticed that the sign of the Hotel Marquette over the entrance was not illuminated; there was nothing which called the mat to his attention. Before he reached the place in front of the tap room he had been walking in the middle of the sidewalk, six or seven feet from the building, but when he reached there he got over to the right and moved closer to the building. There were people on the sidewalk south of the hotel; some of them were walking toward him. He was watching where he was going. There was a storm door on the front of the entrance to the hotel, the top part of which was glass. There was a light in the hallway, high and back from the door; it did not illuminate the mat. There were lights in the recre-

ation parlors adjoining the hotel building on the north and on the south and the window blinds were up and each had a lighted sign in front. The White Way street lights were on. After plaintiff had fallen and looked to see what he had fallen over he had no difficulty seeing the mat. He estimated it was "about two inches thick." He "was in intense pain at that time." He did not see the mat before he fell; he "was watching the people." After he fell he had no trouble seeing the mat. None of the people who gathered about him and who were called as witnesses had any trouble seeing the mat. Two of the witnesses measured its length and width and found it to be approximately 29 inches long and 19 inches wide. No witness measured its thickness. It was lying on the sidewalk up against the entrance to the hotel, the long way north and south. The evening was chilly and damp. The mat was wet and matted down with mud and sand. One witness kicked it and it did not move. He kicked it again and it moved a little. It was picked up and found to be heavy and under it the surface of the sidewalk was discolored. Several witnesses testified it was the kind of fiber coco mat in common use about homes and rooming houses. The witnesses who had knowledge of the fact testified a mat was kept in the vestibule. Mr. Wickersham, the captain of police, testified he had seen a mat in the vestibule and had seen a mat on the sidewalk in front of the entrance; that it was a regular household coco fiber mat frequently seen in different places. There was other evidence as to the extent of plaintiff's injuries. The court sustained defendant's objection to plaintiff's offer to introduce in evidence the city ordinance pleaded.

Appellant contends the court erred in not admitting in evidence the city ordinance pleaded. Omitting provisos not pertinent here, the ordinance reads:

"That every person who shall obstruct or encroach upon any sidewalk, street, avenue, alley or other public property in said City shall be deemed guilty of a misdemeanor and upon conviction shall be punished by a fine of not exceeding $100.00; provided that wherever any obstruction may be found upon any sidewalk, street, avenue, alley or in other public places in the City, it shall be the duty of the Marshal immediately to notify the owner or occupier of the premises fronting thereon or the person placing the same thereon to remove the same without delay, and upon failure so to do the Marshal shall have the obstruction removed at the expense of the owner or occupiers of the property and such expense, if not paid, shall be a valid claim in favor of the City against such persons, . . ."

The trial court likened the ordinance to the one before the court in *Dixon v. Railway Co.*, 104 Kan. 404 (opinion on motion for rehearing, p. 787), 179 Pac. 548, 180 Pac. 733, where it was held:

"An ordinance which requires the abutting owner to repair sidewalks which become dangerously defective, and authorizes the city to make such repairs at his charge if he fails to do so within ten days of the receipt of an official notice of what has been determined to be necessary, does not render such owner liable to a pedestrian who is injured by reason of a defect in the walk." (Syl. ¶ 2.)

There the ordinance related to construction of sidewalks; the one here relates to obstructions on sidewalks. There the ordinance provided that the city marshal, upon learning where there was a defect in the sidewalk, reported it to the city council, upon which notice to the property owner was given, and if he failed to make necessary repairs the city could do so and charge it to him. Under the ordinance here, when there is an obstruction on the sidewalk, the city marshal notifies the owner or occupier of the adjoining premises, or the person placing the same thereon, to remove it, and upon failure to do so the marshal is authorized to remove the obstruction at the expense of the other party. In the opinion (p. 406) it was said:

"Whether or not an absolute obligation of the owner to repair the walk arises before he receives an official notice, his duty in the matter is one owing to the city, and not to individuals."

This conforms to the general law upon the subject as shown by the citations made in the opinion. In short, a city ordinance such as this is not designed to create a personal liability for damages upon the owner of the adjoining property or the person who placed the obstruction upon the sidewalk. In addition to authorities cited in the opinion in that case see 25 Am. Jur. 657; 43 C. J. 1104 and 52 C. J. 438, where many cases are collected. The Dixon case is also cited in *Schaefer v. Lenahan*, (Cal. D. C. App.) 146 P. 2d 929, where it was said (p. 930) that such a statute or ordinance "does not impose liability upon such (abutting) owners, either to travelers or to the city, for injuries incurred by reason of the defective sidewalk," citing a large number of cases from many states.

In this respect it is much like *Sheldon v. Wichita Railroad and Light Co.*, 125 Kan. 476, 264 Pac. 732, where it was held:

"In attempting to cross a city street, a girl ten years old walked into the side of a passing automobile after she had emerged from behind a standing street car, and was injured. In an action for damages prosecuted against the

street-car company by the girl's mother, the jury found the negligence of the company consisted in violating an ordinance of the city forbidding the street car to remain at the place where it was standing. The ordinance was a traffic ordinance, enacted to facilitate movement of traffic, and was not enacted to provide pedestrians and automobile drivers with opportunity for observation. *Held,* the street-car company is not liable to plaintiff."

It is well settled, of course, that one injured through the defect in a sidewalk has no ground of action against an abutting owner merely by reason of his ownership. (*Spear v. City of Sterling,* 126 Kan. 314, 267 Pac. 979, and authorities there cited, and *Moore v. Winnig,* 145 Kan. 687, 66 P. 2d 372.)

Counsel for appellant frankly concede that if plaintiff had been injured by a defect or obstruction upon the sidewalk which had not been caused or created by defendant, then the defendant would not be liable, and cite cases to the effect that one who places an obstruction or causes a defect in a sidewalk might be liable for injuries resulting to pedestrians. Counsel also concede there is no direct evidence that defendant owned the mat in question, or that he or anyone for whose conduct he was responsible placed the mat upon the sidewalk. Counsel refer to defendant's answer to the effect that the mat was kept in the vestibule, to the fact that one of the witnesses saw a mat on the sidewalk before the time of plaintiff's injury, to the established fact that there was a mat on the sidewalk at the time of plaintiff's injury, and the discoloration on the surface of the sidewalk under the mat tended to indicate that it had been there "a considerable time," as tending to show that defendant was the owner of the mat over which plaintiff tripped, and that the evidence was such that the jury might well have concluded that defendant knew or should have known that the mat had been on the sidewalk for some time prior to plaintiff's injury. This view is a tenuous one at the best in view of plaintiff's positive allegations that defendant placed it there and permitted it to remain, especially in view of the fact that there is no evidence in this case that defendant personally knew, or had occasion to know, anything about whether the mat was on the sidewalk. All the evidence about his connection with it is that he owned the building and the hotel operated upstairs and that he hired a manager to look after it. How often or when he was at the hotel was not disclosed. More than that, plaintiff called as his witnesses the defendant and his manager. By doing so he presented them as trustworthy witnesses. They are the persons who knew whether they had placed the mat on the sidewalk, or authorized

anyone to place it there, or for what length of time, if at all, they knew it was there; yet no question was asked of either of them to bring out any of those facts. Hence, plaintiff is in no position to ask this court to take indecisive inferences in lieu of positive evidence available to him. But we shall not decide the case on this point.

It is well settled in this state, and generally elsewhere, that an abutting property owner is not liable for personal injuries sustained by pedestrians injured by stumbling or falling over defects in the sidewalk unless the defect was created by such owner and is such a defect as amounts to a nuisance. (See *Dixon v. Railway Co.,* supra; *Spear v. City of Sterling,* supra; *Moore v. Winnig,* supra, and *Kansas Gas & Electric Co. v. Evans,* 100 F. 2d 549.). As to cities, the rule is well established that the city's duty in respect to sidewalks is to maintain them in a reasonably safe condition for use. It is not an insurer of the safety of pedestrians. It is not required to maintain perfect sidewalks. (*Biby v. City of Wichita,* 151 Kan. 981, 101 P. 2d 919; *Blankenship v. Kansas City,* 156 Kan. 607, 135 P. 2d 538.) The same rule applies in actions against an individual or private corporation alleged to have created and maintained a defect or obstruction in a sidewalk. (See *Moore v. Winnig,* supra; *Slaton v. Union Electric Ry. Co.,* 158 Kan. 132, 145 P. 2d 456; *Kansas Gas & Electric Co. v. Evans,* supra.) Where the defect in the street is slight, or the unevenness is inconsiderable in the surface of the sidewalk or because of objects lying upon it, the court can say, as a matter of law, that it does not constitute an actionable defect. (*Ford v. City of Kinsley,* 141 Kan. 877, 44 P. 2d 255; *Taggart v. Kansas City,* 156 Kan. 478, 134 P. 2d 417, and other cases above cited.)

The allegation in the petition respecting inadequate light is not sustained by the evidence. There was an abundance of light. Every witness who was about there that evening had no difficulty in seeing the mat on the sidewalk; in fact, plaintiff saw it after he had fallen. Something is made of the fact that there was no light on the sign over the hotel, but there is no evidence that the sign was equipped so it could be lighted.

The evidence is clear that under the authorities above cited the mat in question here did not constitute an actionable defect in the walk. Counsel for appellant have been diligent in citing many authorities, all of which have been considered, but we deem it unnecessary to prolong this opinion. Under our own well-considered cases

above cited, which are in harmony with the great weight of authority, we feel confident in holding that the court did not err in sustaining defendant's demurrer to plaintiff's petition or in overruling the motion for a new trial.

The result is the judgment of the court below must be affirmed. It is so ordered.