No. 65,807

CAROL LYON, *Appellee*, v. HARDEE'S FOOD SYSTEMS, INC., *Appellant*.

(824 P.2d 198)

Opinion filed January 17, 1992.

*Paul Hasty, Jr.*, of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, argued the cause, and *D'Ambra M. Howard*, of the same firm, was with him on the briefs for appellant.

*Mark V. Parkinson*, of Parkinson, Foth & Reynolds, of Lenexa, argued the cause, and *Stacy Parkinson*, of the same firm, was with him on the briefs for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This is an action by the plaintiff, Carol Lyon, against Hardee's Food Systems, Inc. (Hardee's), defendant, for personal injuries sustained when she tripped over an elevated tree grate outside of the Hardee's Restaurant at the Matfield Green rest area on the Kansas Turnpike. Hardee's appeals the jury verdict in favor of the plaintiff. The Court of Appeals reversed and remanded with directions to enter a directed verdict for Hardee's. This court granted plaintiff's petition for review.

The facts are not disputed. Carol and John Lyon stopped at the Matfield Green rest area on the Kansas Turnpike around 7:00 p.m. on December 22, 1988. John parked their vehicle in the nonrestricted parking space closest to the Hardee's restaurant door. There was a tree surrounded by a grate in the sidewalk between the vehicle and the door. Upon leaving the restaurant, Carol Lyon hit her foot on the grate and fell forward into the front of the vehicle.

At trial John Lyon testified that the grate was "a good two inches, maybe slightly more" above the sidewalk. Carol Lyon testified that the tree grate was raised above the sidewalk approximately two or three inches, but at least two inches. She saw the grate as she was walking out of the restaurant, but did not see that it was raised. The grate was directly in her path from the restaurant door to the vehicle. The grate was painted black. Carol did not pay any particular attention to the light, but she agreed that it was night and there was sufficient artificial light for her to see where she was going.

The manager of the Hardee's restaurant testified that Hardee's employees had painted all tree grates during the month before the Lyons·stopped at the rest area. Employees also replaced the rock underneath the grates.

A Kansas Turnpike Authority (KTA) foreman testified that, when he was at the rest area in mid-November, he worked with the grate in issue. It was even with the sidewalk at that time. In early December he saw some freshly painted grates leaning against trees, and the rock beneath several of them had been changed. The grate in issue was in place around the tree, but it protruded above the sidewalk, perhaps more than three inches. The new rock under the grate was too large to allow the grate to sit even with the sidewalk. When he returned to the rest area in January, the grate was still above the sidewalk. KTA employees removed the rock and lowered the grate.

Throughout pretrial, trial, and post-trial proceedings and on appeal, Hardee's has argued that the court should hold, as a matter of law, that the variance in the sidewalk surface was a slight defect and, therefore, not actionable. Hardee's moved for partial summary judgment prior to trial and, at the close of the evidence, moved for a directed verdict. The district court denied

both motions and submitted the case to the jury. The Court of Appeals agreed with Hardee's and concluded that the sidewalk unevenness caused by the raised tree grate is not actionable.

Lyon acknowledges that the slight defect in the sidewalk rule is well recognized and does not seek modification of current law. Instead, she argues that actionable negligence is established in the circumstances of this case. She argues that, in light of the surrounding circumstances, the defect is not slight. She further contends that, since the defendant's active negligence created the defect, the policy reasons for applying the rule are not present and it is not applicable in the present case.

We recently stated the rule which governs personal injury actions due to sidewalk surface irregularities as follows:

"Slight variances or imperfections in sidewalk surfaces are not sufficient to establish actionable negligence in the construction or maintenance of sidewalks." *Sepulveda v. Duckwall-Alco Stores, Inc.,* 238 Kan. 35, Syl. ¶ 1, 708 P.2d 171 (1985).

This "slight defect rule" has been in effect for municipalities since this court decided *Ford v. City of Kinsley,* 141 Kan. 877, 44 P.2d 255 (1935). This court examined analogous Kansas cases against the highway commission for highway defects and found that the State was not liable for injuries sustained where the highway defect was "slight and inconsiderable." 141 Kan. at 879. The court also examined sidewalk decisions from other jurisdictions and found that the prevailing rule was that cities were not liable for slight irregularities. 141 Kan. at 880-81. A treatise was quoted to the effect that the trend was toward making the rules of municipal liability less stringent. 141 Kan. at 881.

The rationale for restricting the exposure was that " 'a municipality cannot be expected to maintain the surface of its sidewalks free from all inequalities and from every possible obstruction to mere convenient travel.' " 141 Kan. at 881 (quoting 13 R.C.L. 398, 399). " 'To keep all sidewalks in perfect condition at all times is practically a municipal impossibility.' " 141 Kan. at 881 (quoting 7 McQuillan on Municipal Corporations § 2974 [2d ed.]). " 'To hold a municipality [liable] for accidents occurring from [slight] defects would entail upon them a burden beyond that which they are reasonably required to bear.' " 141 Kan. at 880-81 (quoting *Terry v. Village of Perry,* 199 N.Y. 79, 87, 92 N.E. 91 [1910]).

The slight defect rule adopted in *Ford* exemplifies the basic negligence formula—"a risk-utility analysis in which the risk inherent in a condition . . . is balanced against the utility of the condition . . . and the burden necessary to eliminate or reduce the risk." Westerbeke and Robinson, *Survey of Kansas Tort Law,* 37 Kan. L. Rev. 1005 (1989) (citing Restatement [Second] of Torts § 291-93 [1963]). In *Ford's* progeny, the risk-utility analysis has been expressed many times over. In *Taggart v. Kansas City,* 156 Kan. 478, 480, 134 P.2d 417 (1943), it was said that the defendant city "is not required to furnish perfect walks. Its only duty in this respect is to furnish walks that are reasonably safe for use. [Citations omitted.] To impose a greater duty upon cities would be to place upon them too great a financial burden."

In 1985, after reexamining the rule set out in *Taggart,* this court concluded: "[I]t is just as valid now as when announced. To require a higher degree of care in street and sidewalk maintenance than the current 'reasonably safe for use' standard would make such public improvements financially prohibitive . . . ." *Sepulveda v. Duckwall-Alco Stores, Inc.,* 238 Kan. at 39.

With regard to its application to store owners, in *Sepulveda* this court ·stated: "It is important to note the same rule applies in actions against an individual or private corporation alleged to have created or maintained a defect in the sidewalk. *Roach v. Henry C. Beck Co.,* 201 Kan. at 560; *Pierce v. Jilka,* 163 Kan. at 239." 238 Kan. at 38.

As a matter entirely separate from the slight defect rule, at common law there was no duty imposed upon the owner or occupant of premises abutting on a public street to repair the sidewalk or to remove defects from it. See *Spear v. City of Sterling,* 126 Kan. 314, 316, 267 Pac. 979 (1928), and *Jansen. v. City of Atchison,* 16 Kan. 358, 385 (1876). Liability, therefore, could not be premised on mere ownership or occupancy.

There was provision, however, for holding the owner or occupant responsible where he or she caused the injury by creating some obstruction on the surface of the sidewalk or some excavation beneath it. *Jansen,* 16 Kan. 358, Syl. ¶ 6. For example, the abutting owner was liable in *City of Topeka v. Sash & Door Co.,* 97 Kan. 49, 50, 154 Pac. 232 (1916), "because of his active fault in producing the defective condition." The surface irregu-

larities were caused by the defendant's driving horses and wagons over the sidewalk. In *Spear* an Iowa opinion was quoted as follows:

" 'It is a general rule almost universally recognized that an owner or tenant in the occupancy of a building abutting upon a public sidewalk or street, who by some affirmative act or perhaps by some act of negligence creates a nuisance is liable to persons injured in consequence of such nuisance.' " 126 Kan. at 318 (quoting *Atkinson v. Sheriff Motor Co.*, 203 Iowa 195, 196-97, 212 N.W. 484 [1927]).

The distinction drawn in these early cases between sidewalk defects actively created by and passively allowed to remain by the abutting owner or occupant seems to fade in later cases.

Lyon, however, believes that this distinction is a worthy one, and she makes it an important element of her theory of liability. She argues that Hardee's "actively creat[ing] the defect should be considered as a significant circumstance in evaluating whether or not the slight defect rule applies."

The distinction between sidewalk defects actively created by and passively allowed to remain initially became incorporated into the sidewalk defect considerations when the municipal sidewalk defect rule and the common-law rule of liability of abutting property owners were merged in *Moore v. Winnig*, 145 Kan. 687, 689, 66 P.2d 372 (1937). The marriage occurred without ceremony and in the absence of any discussion of the extension of the application of the rule to include individuals.

*Moore* was decided two years after Kansas adopted the slight defect rule in *Ford*. The concept of the nonactionable slight defect was applied in Moore's suit against an individual whose property abutted the public sidewalk and street. Moore slipped and fell on iron cellar doors, which were covered with ice and snow and allegedly sagged under her weight. There was no allegation as to how much the doors sagged. The petition was wanting in other respects as well. There was no indication that defendant had created the ice and snow condition on the doors or that the sag was the proximate cause of the injury or what the defendant's status was with respect to the property. Citing *Ford*, the court stated that a "slight defect does not furnish [a] basis for actionable negligence." 145 Kan. at 689. *Dixon v. Railway Co.*, 104 Kan. 404, 179 Pac. 548 (1919), and *Spear* were cited for the proposition

that an abutting owner is not liable for injuries unless the sidewalk defect "was such as to constitute a nuisance." 145 Kan. at 690. Applying these principles, the court concluded that Moore had failed to state a cause of action.

Nearly 30 years after *Moore* was decided, an abutting property owner's role in creating a defect was the pivotal consideration in *Harris v. McConnell*, 194 Kan. 800, 401 P.2d 908 (1965). Harris slipped and fell on a sidewalk which allegedly was constructed and maintained by the abutting owner. The opinion cites *Clair v. City of Kansas City*, 180 Kan. 409, Syl. ¶ 1, 304 P.2d 468 (1956), *Pierce v. Jilka*, 163 Kan. 232, 181 P.2d 330 (1947), and *Jansen*, 16 Kan. 358, for the exception to the rule of nonliability of an abutting owner where defects complained of are created by the property owner's or occupant's own negligence. Harris succeeded on appeal in having the trial court's entry of summary judgment against her reversed.

In the present case, Lyon consistently has argued that the surface irregularity of the tree grate was not "slight" within the meaning of the rule. The rule, therefore, does not apply. She argues that Hardee's actively creating the hazardous condition is one of the circumstances which must be taken into consideration in determining whether the defect is slight. In addition, she argues that defendant's creation of the defect abrogates policy reasons for the rule and shuts the door on its application in the circumstances of this case.

The Court of Appeals rejected Lyon's theory that creation of the defect was one of the circumstances making up the totality of circumstances which should be considered in determining actionability of the defect. Its consideration, therefore, was confined to the analytic factors set out in *Taggart* and reaffirmed in *Sepulveda*.

With regard to the creation of the defect, the Court of Appeals stated:

"While Carol states that Hardee's had lengthy notice of the raised grate and should have repaired it, this factor actually reflects on Hardee's negligence in failing to warn of the defect or repair it. Carol's argument that Hardee's voluntarily maintained a foreign object in the sidewalk also goes to Hardee's negligence. According to *Sepulveda*, 238 Kan. 35, the issue of negligence is not reached until actionability has been determined."

In *Sepulveda*, the sidewalk defect rule is said to have survived the adoption of comparative negligence. 238 Kan. at 38-39. Suggesting why its resolution of the case differed from that of the Court of Appeals, this court counseled that a distinction "must be made between the actionable defect rule and the issue of plaintiff's negligence. The latter issue cannot be reached until the former is resolved. If there is no actionable defect, there is no negligence and thus nothing to compare." 238 Kan. at 40.

In *Sepulveda* this question from *Taggart* was quoted: " 'Was the imperfection in the sidewalk at the place where plaintiff fell so serious as to be an actionable defect, and was plaintiff negligent in her use of the walk in such a way as to bar her recovery?' 156 Kan. at 480." 238 Kan. at 38.

The court went on to say: "This statement indicates the issue of whether the sidewalk imperfection constituted an actionable defect was separate and distinct from the issue of whether plaintiff was contributorily negligent." 238 Kan. at 38.

The discussion in *Taggart* and in *Sepulveda* is of the plaintiff's negligence. At the time *Taggart* was decided, the plaintiff's contributory negligence was an issue. Following the adoption of comparative negligence, Sepulveda's negligence was said still to be an issue, but only if there was another actor's negligence to which it could be compared. Thus, the *plaintiff's* negligence cannot be compared if an examination of the circumstances surrounding the defect reveals that it was not actionable.

In the present case, the Court of Appeals, in accepting Hardee's argument that the defendant's negligence in creating the defect is not relevant, has drawn a distinction between the actionable defect rule and the issue of negligence generally, not just plaintiff's negligence. This distinction is not warranted by this court's language, quoted just above, in *Sepulveda*.

The policy underlying the slight defect rule is to relieve those who are responsible for construction and maintenance of sidewalks of the financially prohibitive burden of maintaining them in a perfectly level condition, particularly in light of Kansas weather. In this case, the Court of Appeals' refusal to consider Hardee's creating the defect and not leveling the grate despite notice, in effect, ignores factors which would not have increased Hardee's

financial burden. Nor would it have increased Hardee's burden of keeping watch for hazardous conditions. The policy, therefore, is not served by excepting defendant's negligence in creating the irregularity. The Court of Appeals rejected plaintiff's argument based upon our application of the rule to sidewalk defects not caused by natural occurrences, such as a plywood board in *Roach v. Henry C. Beck Co.*, 201 Kan. 558, 442 P.2d 21 (1968); a fiber doormat in *Pierce v. Jilka*, 163 Kan. 232; and a steel gutter plate in *Biby v. City of Wichita*, 151 Kan. 981, 101 P.2d 919 (1940).

In *Roach*, a sheet of plywood had been placed on the sidewalk to cover a hole which was to be used for planting a tree. In *Pierce*, plaintiff fell over a fiber doormat which had been placed on the sidewalk in front of the entrance to a hotel. In *Biby*, plaintiff caught her heel on the edge of a flat steel plate which had been placed over a drain gutter traversing the sidewalk. In *Moore* plaintiff fell on iron doors in the sidewalk which had been placed there to cover a cellar entrance.

In each of the cases mentioned in the preceding paragraph, the defect was nonactionable even though technically it was created by the defendant. In *Harris v. McConnell*, the defendant created the irregularity, and the district court's entry of summary judgment for defendant on the ground that plaintiff had no cause of action was reversed. The issue in *Harris* was described as follows:

> "The petition in this case alleges that it was defendants who constructed the concrete sidewalk in front of their place of business and that when so constructed it was dangerous, defective and unsafe for travel in that it contained holes and depressions, and that the surface thereof was uneven, and that it was constructed on the wrong grade. In other words, the claim is not that the sidewalk became defective through use, age or other means— *but rather is that defendants themselves constructed and maintained it in the defective manner alleged.*" 194 Kan. at 802-03.

This reasoning was further emphasized by quotes from three Kansas cases and a reference to an annotation in A.L.R.2d to the effect that an abutting owner is not liable for injuries due to sidewalk defects unless the defect resulted from his or her negligence. 194 Kan. at 803.

The affirmative acts of the defendants in creating hazardous conditions does not appear to have been emphasized by the plain-

tiffs in *Roach, Pierce, Biby,* or *Moore.* Indeed, in *Moore* this court dwelled on the inadequacy of the allegations in the petition to state a cause of action based upon any irregularity of the level of iron doors in the sidewalk. It was noted that the petition failed to allege how much the doors sagged or that the alleged sag was the proximate cause of Moore's injury. 145 Kan. at 689.

Actionability of a sidewalk defect, as a matter of law, requires a threshold factual determination. In making its determination, the district court seems to have acknowledged defendant's affirmative act in creating the defective condition. The Court of Appeals did not.

The Court of Appeals extended this court's instruction to divide surrounding circumstances into those which can be considered as a threshold matter and those, like plaintiff's negligence, which are reserved for consideration if the threshold is passed. The Court of Appeals placed defendant's acts in the second category, along with the plaintiff's acts. This categorization does not seem to be prescribed by our prior decisions. Under this state's principles of comparative negligence, acts which are to be compared with defendant's for the purpose of apportioning fault may fit into the second category. The acts of the defendant in creating the defect, however, are appropriate to the first category.

The Court of Appeals applied the factors enumerated in *Taggart* and concluded that the defect was slight and, therefore, not actionable. However, in *Taggart* there was no allegation or finding that the defendant City negligently caused the defect. The allegation of liability against the City was for negligently permitting the defect to exist. We held that in that situation, the defendant City had only a duty to furnish a sidewalk that was safe for use. It is in making that determination that the slight defect rule is applicable. If the defect is slight, then the defect is not actionable. The policy reasons for applying the rule are clearly present in that situation. However, where the surface irregularity of the sidewalk is caused by the negligent acts of the defendant, the negligence is actionable regardless of whether or not the irregularity is a slight defect. In that situation, the slight defect rule is not relevant to a determination of liability.

We conclude that the decision in *Harris* is controlling in the present case. Here, plaintiff's claim is based upon a defect neg-

ligently constructed and maintained by the defendant. That defect was caused by the negligent acts of the defendant and not by the acts of nature or the passage of time. The slight defect rule is not intended to shield from liability those who negligently create and maintain a defect in the sidewalk. Its intended function is to limit the liability of those who permit or allow a slight defect not of their own making to remain. The rule of a slight defect in a sidewalk does not apply where the defect is negligently created and maintained by the defendant.

Hardee's fallback position is that, if the court does not rule as a matter of law that the defect was nonactionable, the district court should be reversed for failing to instruct the jury on the rule of actionable defects. The instructions requested by Hardee's are as follows:

"The laws of Kansas provide that sidewalks are in reasonably safe condition even if there are slight variances in the level of the sidewalk surfaces, whether those variations are caused by projections, depressions, or otherwise and a proprietor or operator of a place of business kept open for public patronage is not negligent in the construction or maintenance of a sidewalk with slight variances in the level of sidewalk surfaces."

"The laws of Kansas provide that variances of up to three inches between adjacent surfaces of a sidewalk area are 'slight variances' and do not constitute a dangerous condition or an unsafe condition and the proprietor of the place of business need not repair such a variance or warn of it."

In view of our holding that the slight defect rule does not apply, the district court did not err in refusing to give the requested instructions. We note, however, that Hardee's proposed instructions do not accurately state the law had the slight defect rule been relevant in determining liability. A defect is not automatically categorized as nonactionable because it does not exceed a certain physical measurement. All the surrounding circumstances, not just the size of the irregularity, must be taken into account.

"In determining whether a sidewalk is reasonably safe for the use of pedestrians its location, the extent of the irregularity therein, its prior use and its use on the occasion in question are matters to be taken into account." *Taggart,* 156 Kan. 478, Syl ¶ 2.

Instead of giving Hardee's proposed instructions, the district court instructed the jurors as to the duty owed by Hardee's to its business visitors:

"A proprietor or operator of a place of business kept open for public patronage owes a duty to use ordinary care to keep in a reasonably safe condition those portions of the premises used by business visitors, and to warn them of dangerous conditions upon the premises of which the proprietor knows, or should know by the exercise of ordinary care, and which are not known to them.

"The duty of Hardee's is not affected by any obligation of the Kansas Turnpike Association [sic] to maintain the premises."

The first paragraph of this instruction is PIK Civ. 2d 12.02; the second paragraph is based on PIK Civ. 2d 12.34. We find no error in the instructions given by the district court.

The judgment of the Court of Appeals is reversed, and the judgment of the district court is affirmed.

ABBOTT, J., not participating.

■ TERRY L. BULLOCK, district judge, assigned.