No. 19,539.

SADIE ADAMS, as Executrix, etc., *Appellant*, v. THE IOLA ELECTRIC RAILWAY COMPANY and THE CITY OF IOLA, *Appellees*.

SYLLABUS BY THE COURT.

NEGLIGENCE — *Street-car Track Extending above Surface of Street — Buggy Overturned — Death of Driver — Demurrer to Evidence Wrongfully Sustained.* The evidence examined and held sufficient as against a demurrer to warrant a finding of liability on the part of the railway company and the city for the death of a traveler on an unpaved street, whose horse became frightened at an approaching car, turned sharply around, and overturned the buggy in which the de-

ceased was riding because the front wheel of the buggy caught against a rail of the street-car track which extended much above the surface of the street.

Appeal from Allen district court; OSCAR FOUST, judge. Opinion filed June 12, 1915. Reversed.

*W. R. Cline, J. Q. Stratton*, both of Erie, and *F. J. Oyler*, of Iola, for the appellant.

*H. A. Ewing, S. A. Gard*, and *G. R. Gard*, all of Iola, for appellee The City of Iola.

*Altes H. Campbell*, and *John F. Goshorn*, both of Iola, for appellee The Iola Electric Railway Company.

The opinion of the court was delivered by

BURCH, J.: The action was one by the plaintiff as executrix for damages for the death of her husband, J. A. Adams, occasioned by the negligence of the railway company and the city. A demurrer was sustained to the plaintiff's evidence, judgment was rendered against her, and she appeals.

A brief statement of the essential facts favorable to the plaintiff will show that the demurrer was wrongfully sustained.

Washington avenue, in the city of Iola, runs north and south and is intersected by Acers street, which runs east and west. Washington avenue is the main traveled street leading out of Iola toward the south and is paved to a point probably six or eight feet south of Acers street. The track of the railway company occupies the center of Washington avenue to a point something like 250 feet south of Acers street, where the track turns toward the east, and at a distance of some 500 feet from the south line of Acers street the track crosses a bridge over Elm creek. The ordinance permitting the railway company to occupy the street with its track allows the use of T rails, but provides that at no place shall the rails extend above the surface of the street more than three-quarters of an inch

and that the track shall be maintained in such a way that teams and wagons may cross in safety at any place. There was evidence that at the place where the casualty occurred the entire rail on the west side of the track and some of the ties were exposed. A witness engaged in the transfer business who saw the street frequently, often several times a day, said that all the rails at the place in question were above the surface of the street all the time and that the west rail projected above the adjoining roadway on the west in the neighborhood of two inches. Persons traveling south on Washington avenue beyond Acers street used the portion of the street west of the railway track. On the west side of the street was a ditch of considerable width and depth and the traveled way lay between the track and the ditch. There was evidence that a buggy could not safely turn between the track and the ditch. On February 16, 1912, the deceased, with a companion, J. W. Marker, was driving a horse hitched to a Stanhope or "undercut" buggy southward on Washington avenue. After leaving the paved portion of the street south of Acers street the horse pricked up its ears, probably because it heard a street car which was coming from the southeast across the Elm creek bridge. When about thirty or forty feet south of Acers street the horse exhibited signs of fright. Mr. Marker had observed the horse for several years when the deceased was driving it, and was amused that it should exhibit life enough to appear scared. The deceased said it would give them no trouble. The horse, however, threw its head to one side, indicated that it was frightened, and would not proceed. The day was clear and the car and its motorman were in plain view. The deceased threw up his right hand and made a motion to the motorman, struck the horse on its left side several times with the buggy whip to keep it from turning across the track, and then endeavored by keeping the reins tight to hold the horse in the middle of the road-

way. The car was moving at a rate of probably twelve miles per hour, the motorman did not slacken speed, and when the car rounded the curve and turned directly toward the horse it reared high up in the air and turned as if on a pivot to the left. The front of the buggy was thus turned toward the north and east. The front wheel on the right side struck the west rail of the track and lifted the left rear wheel into the air. Mr. Marker, who had risen, fell out backward, and the deceased was thrown upon the track. Referring to the obstruction which the protruding rail of the track offered to the movement of the buggy, Mr. Marker testified that the buggy did not cramp naturally, that there was nothing to cause the motion of the buggy until it struck the track, and that when the wheel of the buggy struck the track the motion and jar came which lifted the rear wheel, threw him out backward, and threw the deceased on the track. Although the car was running on a slight upgrade and could have been stopped in substantially its own length, it ran over Mr. Adams and killed him.

Some slight discrepancies between the allegations and the proof as to the precise movements of the horse and the condition of the track are pointed out, but they are not material, they did not constitute a variance, and if they had been important the petition might have been amended to correspond with the proof without changing the cause of action.

The railway company was negligent in maintaining a track which did not comply with the franchise ordinance and which constituted an obstruction to travel on the street. Furthermore, it was a question for the jury whether or not the motorman was guilty of negligence. Although the horse did not rear up until the car was quite near, the motorman saw or should have seen the warning given him, saw or should have seen the plaintiff whip the horse without avail, and should have placed the car under control. The testimony is

that after the deceased was thrown upon the track he succeeded in getting upon his feet and was then struck by the car, which had not slackened speed.

It was a fair question for the jury whether or not the city was guilty of negligence on account of the condition of the street. While no witness testified directly as to how long the conditions disclosed had existed, the fair conclusion to be derived from all the evidence is that they were not recently created and indicated such a settled and established state of affairs on a much traveled street that notice to the city could be inferred.

The evidence of Mr. Marker was sufficient to warrant the jury in finding that the raised rail of the track was the proximate cause of the injury, notwithstanding the conduct of the horse which had not yet run away when the deceased was thrown out. The cases of *Stephenson v. Corder,* 71 Kan. 475, 84 Pac. 124, and *Eberhardt v. Telephone Co.,* 91 Kan. 763, 139 Pac. 416, are readily distinguishable.

The deceased was not guilty of contributory negligence as a matter of law in not turning or allowing the horse to turn across the obstructing rail of the track and in front of the on-coming car, and the deceased was not guilty of contributory negligence as a matter of law in not turning into the ditch on the side of the street, even if he could have persuaded the horse to turn that way.

The judgment of the district court is reversed and the cause is remanded to the district court with direction to overrule the demurrer to the plaintiff's evidence and award the plaintiff another trial.