# AGNES L. KELLETT *v.* CITY AND COUNTY OF HONOLULU.

## No. 2398.

ARGUED MAY 27, 1940.                    DECIDED JUNE 4, 1940.

COKE, C. J., PETERS AND KEMP, JJ.

448

OPINION OF THE COURT BY KEMP, J.

This is an action for damages for personal injuries. Plaintiff had judgment below and the defendant prosecuted exceptions.

The question of the sufficiency of the defendant's exceptions was raised, the plaintiff contending that they were not sufficiently specific to warrant review. Without indulging in details, we deem them sufficient to present for review the contentions of the defendant that it did not appear from the evidence that the negligence of the defendant, if any, was the direct and proximate cause of plaintiff's injuries and that the evidence was insufficient to sustain the finding that the defendant was negligent in its failure to remove the obstruction which caused plaintiff's injuries.

The plaintiff's injuries were occasioned by a traffic sign falling and striking her while she was lawfully using a public street. The traffic sign had been permanently installed by the defendant a few inches from the street curb, in the sidewalk, but immediately before it fell and struck plaintiff it was leaning in an upright position against a lamppost, four or five feet from where it was originally installed. How this traffic sign was removed from its original position does not appear. It does appear,

however, that the standard had been broken where two pieces of pipe of which it was composed were coupled together and that when the sign was inspected by several witnesses the end of the standard exhibited a fresh break. The standard consisted of two pieces of one and one-half inch pipe, eight feet in length above the ground, to which was bolted a rectangular metal sign bearing a legend indicating its position as a place where the cars, coaches and busses of the transit companies stopped for the admission and discharge of passengers, and the limits of a parking area. Neither does it appear how the standard, after being broken off, attained its new position against the lamppost. The plaintiff's complaint was drafted upon the theory that the defendant had breached its duty to provide a safe way of travel by its failure to exercise due diligence to remove the broken traffic sign within a reasonable time after it had become a source of danger. On the trial, however, the plaintiff advanced the additional theory, and offered evidence in support thereof, that the defendant had breached its duty to keep its streets safe for travel by reason of faulty construction, improper installation and ineffectual maintenance of the traffic sign in question. The court adopted plaintiff's view and found that the defendant was negligent in the construction, installation and maintenance of said traffic sign and that said negligence was the direct and proximate cause of plaintiff's injuries.

The duty of a municipality to keep its streets safe for the public does not extend to the construction, installation or maintenance of traffic signs. Traffic signs are artificial structures erected on or adjacent to the public streets or sidewalks for the primary purpose of controlling traffic on the streets and have no relation to the use of the streets or sidewalks as such by the traveling public. It is only when a traffic sign becomes dangerous to the public

in the lawful use of the streets and sidewalks that it constitutes a defect in or obstruction of the street or sidewalk and its presence upon or in the street or sidewalk may be considered in connection with the duty which the municipality owes to the public to keep its streets and sidewalks safe for travel. (*Kirk* v. *City of Muskogee,* 183 Okla. 536, 83 Pac. [2d] 594; *Auslander* v. *City of St. Louis,* 332 Mo. 145, 56 S. W. [2d] 778; *Aaronson* v. *New Haven,* 94 Conn. 690, 110 Atl. 872, 12 A. L. R. 328.)

In support of the allegations of the complaint, plaintiff was entitled to show that the traffic sign in question, in the position in which it stood immediately prior to the accident, constituted a defect or obstruction in the street over which she was passing and that the defendant was negligent in failing to remove the same within a reasonable time. It was only when the traffic sign became a defect or obstruction in the street that the duty which the defendant owed the traveling public became operative. Therefore, the issue of negligence on the part of the defendant was limited to the situation as it developed after the traffic sign was broken and assumed a position of danger. The negligence of the defendant in the construction, installation and maintenance of the traffic sign, if any, was immaterial. By so holding we do not intend to be understood as deciding that the negligence, if any, of the defendant in the construction, installation and maintenance of the traffic sign is immaterial for all purposes. Inasmuch as a new trial must be ordered, it will be sufficient to observe that, as hereinafter pointed out, the amount of diligence required of the municipality to detect and remove the traffic sign after it became a defect or obstruction in the street may be influenced by the manner of its construction, installation and maintenance.

We have now to consider the question of whether or not the evidence sustains the conclusion that the defendant

had constructive notice of the defect in the street caused by the traffic sign being broken down and leaned against the lamppost.

It is beyond question that the defendant would be liable to plaintiff for the injuries which she suffered in the manner set forth in the complaint and borne out by the evidence, provided it knew, or, by the exercise of proper vigilance, would have learned of the existence of the dangerous situation prior to the accident and failed in its duty to exercise reasonable diligence to remove the danger. The defendant owed a duty to the public to keep its streets and sidewalks in a safe condition for travel. The measure of its responsibility is that it is bound to exercise reasonable diligence and care to accomplish that end. (*Pemberton* v. *City of Albany*, 188 N. Y. S. 245.)

In concluding its decision the court said: "While it is not necessary to the Decision in this case to do so, because the Court finds that faulty construction, installation and inspection plainly exists in this case; but this Court does find from all the surrounding circumstances in this case, that the City and County did have constructive notice." Elsewhere in its decision, after making a definite finding that the installation of the sign was faulty, the court said: "If Defendant was at fault in original installation, it continued as negligence, and that a drunk could have broken it off." The foregoing excerpts from the decision make it reasonably clear that the court did not base its decision and judgment on the finding that the defendant had constructive notice of the dangerous situation created by the sign being broken down and leaned against the lamppost but concluded that, by so constructing the sign that "a drunk could have broken it off," the defendant was guilty of negligence which, regardless of the intervening act of others, was the cause of plaintiff's injury.

If, however, the finding that the defendant had constructive notice of the dangerous situation created by the intervening act of others is justified by the surrounding circumstances disclosed by the evidence, it would be the duty of defendant to act promptly to remove the danger, and its failure to discharge that duty would constitute negligence which would be the proximate cause of plaintiff's injury, and the fact that the court gave an untenable reason for its judgment would not justify sustaining the exception based on the contention that there was a total lack of evidence that the defendant had constructive notice of the existence of the obstruction which caused plaintiff's injury.

The circumstances which the court considered sufficient to charge the defendant with constructive notice of the condition which caused plaintiff's injury are recited in its decision. After noting that it is admitted by counsel that there is no local authority on constructive service (*sic*) to a municipality and that the police have a rule to report when these signs are down, the circumstances deemed sufficient are set forth as follows:

"The Court finds from the great weight of the evidence in this cause, that this sign was of faulty construction; that it was improperly and defectively and faultily installed and negligently inspected, and further, the Court feels that this sign post was in the very center of the City—in fact, the very center of the civic center of the City, directly in front of the Governor's Office and of the Courts, across the street from the Post Office, half a block from the Library and Territorial Building, and a block from the City Hall and under constant Police patrol, so that all of those things combined, together with the extra Police Officers going to and from their duties, and one of them being on duty within a block of the place at that very time the accident happened, that the Defendant

Municipality had constructive notice. The fact that these officers did not look and see the condition of this sign is no excuse, for he who looks and does not see, is no better than he who neglects to look or does not look. If this sign had been knocked down into the street or on to the sidewalk very shortly before it fell on Plaintiff, then the Police Officer on duty at the end of the block should have seen it and should have seen the person who placed it there."

In 7 McQuillin, Municipal Corporations (2d ed.) § 2911, p. 38, *et seq.*, it is said: "The basis of recovery being negligence, the next question is what is negligence in so far as the condition of streets is concerned? How careful and painstaking must the municipality be? The answer to all of this, so far as to the rule as to degree of care is concerned, is without dissent, as pointed out in next preceding section, unless perhaps indirectly. Reasonable, i. e. ordinary, care is required. However, there is no fixed standard of the requirement of reasonable or ordinary care. Its measure is not accurately defined by statute or decision. Manifestly the requirements are not, and cannot be the same under all circumstances, and in all places. In its very nature it is incapable of exact expression, or reduction to an unvarying formula. What is such care, therefore, in a given case is necessarily dependent on the particular facts developed in the judicial investigation. * * * It should always be kept in mind that the degree of care never changes, but that the amount of care which must be used to constitute ordinary or reasonable care varies according to the circumstances of the particular case, unless otherwise provided by statute. * * * The question is then presented, what is ordinary or reasonable care? It is held generally that the ordinary care required of a municipality as to its streets means that degree of care which might reasonably be expected from an ordinarily prudent person under the circumstances surrounding the

party at the time of the injury, and a municipal officer cannot himself establish a standard of care by his previous work. * * * In the application of the rule requiring reasonable care, to particular sets of facts, it is held that if the street has once been constructed in a safe condition, the only duty of the municipality is to exercise reasonable care in the discovery and repair of defects; that the duty to observe the condition of its streets, according to most of the decisions, is a greater one than the duty of the traveler. The degree of care does not vary with the size of the street, nor with the number of miles of streets and sidewalks in the municipality, nor with the size of the city. On the other hand, the same amount of care is not required as to an alley as is required on streets, unless the alley has by its use in fact become a public street. Thus, ordinary care is required in all cases, whether the street or sidewalk is in a populous or sparsely inhabited part; but a greater amount (not degree) of care is required as to driveways and sidewalks in populous and much traveled parts of the municipality than with reference to such ways in parts of the municipality where the way is used less frequently. So a greater amount of care may be necessary where a thing in the street was erected by the municipality itself than when erected by others."

One fact which invariably receives consideration in determining whether or not a municipality may be charged with constructive notice of the existence of a defect or obstruction in its streets, is the length of time the defect or obstruction has existed prior to the injury caused by it. In the instant case there is a total lack of direct evidence on this point. The court seems to have concluded from the circumstances recited in the decision that the defect or obstruction had existed for a considerable length of time prior to the accident. This conclusion is implicit

in the statement that "If this sign had been knocked down into the street or on to the sidewalk very shortly before it fell on Plaintiff, then the Police Officer on duty at the end of the block should have seen it and should have seen the person who placed it there." The evidence discloses that the police officer referred to by the court as being on duty at the end of the block at the time of the accident was a special traffic officer who was dispatched from the police station at 7:30 a.m. to direct traffic at King and Punchbowl streets during the early morning rush. The accident occurred at about 7:45 a.m., more than six hundred feet from the traffic officer's post of duty. It appears from the evidence that said officer did not necessarily pass the scene of the accident in going to his post of duty and it does not appear from the evidence that he did pass that way. There is, in fact, an absence of evidence on that point, the officer not having been called as a witness. Even if it be assumed that said officer could and in all probability would have seen the breaking and placing of the sign from his post of duty, the longest time that could be deduced from the fact that he did not see it would be between ten and fifteen minutes. The foregoing are the only circumstances relied upon by the court or which could have been relied upon to support its conclusion that the dangerous situation had existed for a considerable length of time before the accident. The other facts recited by the court in support of its conclusion that the defendant had constructive notice of the defect or obstruction which caused plaintiff's injury are facts which show that the scene of the accident was in the heart of the city and within a police beat which is patrolled day and night. A greater amount of care is required as to driveways and sidewalks in populous and much-traveled parts of the municipality than is required as to such ways in parts of the municipality where the way is used less frequently.

(McQuillin, Municipal Corporations, *supra.*) The fact that the portion of the city in which the accident occurred was, as recited by the court, under constant police patrol, would tend to show that the defendant discharged its duty in that regard rather than that it was negligent.

The court found that the inspection service maintained by the defendant was inadequate and negligent. The uncontroverted evidence is to the effect that the defendant has one employee who regularly spends about four hours a day driving over the city streets and roads observing the condition of the traffic and stop signs; that he drives an average of one thousand miles a month making his inspections. In addition a sidewalk inspection service is maintained but the details of that service are not shown. The foregoing is supplemented by instructions to the police to report all defects in signs observed by them to the city engineer's office.

In support of her argument that the circumstances shown are sufficient to charge the defendant with notice of the defect, plaintiff has cited the following cases: *Harriman* v. *Boston,* 114 Mass. 241; *Braddy* v. *City of Dublin,* 41 Ga. App. 603, 154 S. E. 204; *City of Rome* v. *Brooks,* 7 Ga. App. 244, 66 S. E. 627; *Holitza* v. *Kansas City,* 68 Kan. 157, 74 Pac. 594; *City of McLeansboro* v. *Trammel,* 109 Ill. App. 524; *Village of Coffeen* v. *Lang,* 67 Ill. App. 359.

We have examined all of said cases and fail to see wherein they support plaintiff's argument. In *Braddy* v. *City of Dublin, supra,* the evidence showed without dispute that the top of a meter box in the sidewalk had been removed in the afternoon of the day preceding the accident by a plumber who was repairing the water pipes of an adjacent residence. The exact time of the accident is not disclosed by the opinion but the opinion does state that the defect had not existed longer than twenty-four hours

prior to the accident. The opinion also discloses that after the plumber had completed his work, the city plumbing inspector made an inspection about the premises and in doing so passed by the meter box two or three times. The court granted a nonsuit. In reversing the order of nonsuit the appellate court, at page 205, said:

"It is the duty of a municipal corporation to keep its streets and sidewalks in a reasonably safe condition, and, if a defect has existed in a sidewalk for such a length of time that by reasonable diligence in the performance of their duties the defect ought to have been known by the proper authorities, notice will be presumed and proof of actual knowledge will not be necessary in order to render the municipality liable for injuries occasioned thereby. * * * The length of time it is necessary that such a defect exist in order for an inference of notice to arise is ordinarily a question for the jury. * * * 'An impracticable or unreasonable amount of inspection should not be required of the corporation, but only such as prudence, good sense and reason make necessary. * * * If the defect had been in existence for only a short time, and the agents or officers of the city had no knowledge of it, or a sufficient length of time had not elapsed so that they ought to have known of it in the exercise of ordinary care and diligence, the corporation should not be held liable for an injury resulting because of the defect.' * * * Accordingly, in view of all the facts and surrounding circumstances pertaining to the particular case, it was for the jury to say whether the city had sufficient opportunity to become aware of the defective condition of the meter box top at the time the injury occurred, as well as whether the plaintiff was in the exercise of ordinary care for her own safety."

In other cases cited in which it is likewise held that the circumstances were sufficient to warrant submitting to the jury the questions of whether or not the municipali-

ty had constructive notice of the defect which caused the injury, there was evidence tending to show that the defect had existed for periods ranging from one or more days to more than two months. In only one of the cited cases does the opinion fail to disclose how long the defect had existed prior to the accident, and in that case the court said that if a defect is apparent and renders the crossing unsafe for travel and "so remains for a considerable length of time," notice will be presumed and liability attach the same as with actual notice. (*City of McLeansboro* v. *Trammel, supra.*)

Defendant has cited a multitude of cases holding that circumstances much stronger than the circumstances of this case were not sufficient to charge the municipality with notice of a defect in its streets, but we do not deem it necessary to review all of them. The case of *Canfield* v. *City of Newport*, 24 Ky. L. Rep. 2213, 73 S. W. 788, is, however, very much in point. On Sunday morning, between 11:00 and 12:00 o'clock, some boys removed the cover of a sewer manhole, which was about nine feet deep, and dropped the cover into the manhole. A citizen placed a barrel over the hole and weighed it down with rocks. It remained thus during the day but was removed by some unauthorized person during the night. Plaintiff fell into the hole at daybreak the following morning. The trial court directed a verdict for defendant. On appeal the court said:

"The testimony fails to show at what hour or by whom the barrel was taken from over the hole, or that the city authorities had notice that the covering had been removed. A city is not responsible for accidents which happen in its streets as the result of defects caused by the acts of persons not connected with its government, unless such defect has existed for such a length of time and under such circumstances that the city, or its officers, in the

exercise of proper care and diligence, ought to have obtained knowledge of it. * * * The placing of a barrel over it appears to have been a reasonable precaution against accidents, although not taken by the city, and no injury would have resulted, except for the unauthorized removal of it from the hole some time during Sunday night. The facts in the case do not, therefore, warrant a presumption of negligence on the part of the city of Newport, and we think the trial court properly directed the jury to find a verdict for appellee."

In *City of Portsmouth* v. *Houseman,* 109 Va. 554, 562, 65 S. E. 11, the court said: "A city is not an insurer against accidents upon its streets, and in order to hold it liable for defects therein it must be shown that the city had actual or constructive notice of the defect which caused the accident, and had reasonable time to repair it or guard against any accident that might reasonably be expected to result therefrom, after having such notice; and that by constructive notice is meant that the defect by which the injury is alleged to have been caused had been so open and notorious and continued for such a length of time before the injury that the city, by its proper officers, exercising reasonable diligence, should have acquired knowledge of such defect."

Negligence cannot be presumed from the absence of evidence and when constructive notice is relied upon to show negligence, facts upon which the notice may be reasonably presumed must be proved. (*City of Portsmouth* v. *Houseman, supra.*) It will not be presumed that officers of a city, charged with the duty of observing and reporting defects in or obstructions of the streets, neglected their duty from the mere fact that they failed to observe a condition not shown to have existed for any given length of time prior to the injury caused thereby. There being no contention that the defendant had actual

knowledge of the situation, the burden was upon the plaintiff to prove facts from which it might reasonably be presumed that the condition had existed for a sufficient length of time to enable the officials of the municipality to discover and remove it.

To hold that the evidence in this case is sufficient to support the conclusion that the defendant had constructive notice of the fact that the sign had been broken down and leaned against the lamppost would be little, if any, short of subjecting the municipality to a liability as an insurer against accidents upon its streets.

Concluding, as we have, that there was no evidence to support either conclusion of the court, the exceptions must be and they are sustained, and a new trial ordered.

*W. C. Tsukiyama,* City and County Attorney (also on the brief), for defendant.

*M. K. Ashford* (*W. H. Heen* with her on the briefs) for plaintiff.