No. 40,255

BETTY LOU CLAIR, *Appellee* and *Cross-Appellant* v. THE CITY OF KANSAS CITY, KANSAS, a Municipal Corporation, *Cross-Appellee,* and J. B. RICH, BERNARD BUCHHOLZ, ROBERT S. LEVY, PHILIP PEKOW and RUTH PEKOW, Trustees of the LEVY-BROOKSIDE TRUST, R. LEVY and RUTH LEVY, Trustees of the ROBERT S. LEVY and RUTH LEVY TRUST, CELIA PEKOW, Trustee of EUGENE PEKOW TRUST and SANDRA PEKOW TRUST, Co-Partners Doing Business Under the Firm Name and Style of HURON BUILDING, *Appellants.*

(304 P. 2d 468)

Opinion filed December 8, 1956.

*Willard L. Phillips,* of Kansas City, argued the cause, and *Thomas M. Van-Cleave, Jr.,* of Kansas City, and *Tom J. Stubbs,* and *Robert S. McKenzie,* of Kansas City, Missouri, were all with him on the briefs for the appellants.

*John E. Shamberg,* of Kansas City, argued the cause, and *Joseph Cohen,*

*Charles S. Schnider, Thomas E. Joyce, Joseph P. Jenkins* and *Albert M. Ross,* all of Kansas City, were with him on the briefs for appellee Betty Lou Clair.

*C. W. Brenneisen, Jr., Joseph T. Carey, Francis J. Donnelly,* and *George W. Haley,* all of Kansas City, were on the brief for the appellee City.

The opinion of the court was delivered by

PARKER, J.: This is an action to recover damages for personal injuries sustained by reason of a fall on an alleged defective sidewalk in the City of Kansas City, Kansas. Throughout the opinion the parties will be referred to as follows: Betty Lou Clair, the plaintiff and appellee, as plaintiff; the defendants, now the appellants, J. B. Rich, et al., doing business as the Huron Building, as owners; and the defendant City of Kansas City, Kansas, now appellee, as the city.

Plaintiff commenced the action by the filing of a petition in district court wherein she alleged in substance that the owners maintained, operated and owned a multistoried building known as the Huron Building, in connection with which activity they maintained a sidewalk elevator, opening on the sidewalk in front of the property, and maintained the sidewalk in front of such building; asserted that such sidewalk was a public sidewalk, running adjacent to and parallel to the front of the building in a north and south direction, and that the city was charged with the duty and responsibility of maintaining the public streets and sidewalks within its confines in a reasonably safe condition; claimed that on or about September 21, 1953, as she was walking on such sidewalk, directly in front of the building, her right shoe caught and she fell in a hole, constituting a defect in the sidewalk, thereby sustaining injuries; detailed the approximate size of the alleged defect; described the injuries suffered and sustained by her as the result of her fall; charged that the owners and the city were negligent in failing to maintain the sidewalk in front of the building, in allowing it to fall into a state of disrepair, in failing to repair the defective area, and in failing to barricade such area and erect warning signs; averred that the city had been given notice of her claim as provided by law; and prayed for judgment against both the owners and the city for all damages sustained by her as the result of the fall.

In response to the petition the owners and the city filed separate answers each containing a general denial, a claim that if plaintiff had sustained personal injuries as alleged the proximate cause thereof was her own carelessness and negligence in failing to look

where she was walking and see the alleged hole in the sidewalk when by the exercise of reasonable care and diligence she could and should have seen it, and a prayer that plaintiff take naught by reason of the action. Subsequently the city filed an amended answer. This pleading duplicated the allegations of its initial answer and in addition set forth in more detail the specific acts of carelessness and negilgence relied on as precluding the plaintiff's recovery.

In replies to these answers plaintiff denied all allegations of new matter therein contained and renewed her prayer for judgment.

With issues joined as just related the cause came on for trial by a jury. Following the close of plaintiff's evidence separate demurrers were made thereto by the owners and by the city on grounds, among other things, that such evidence did not prove or tend to prove a cause of action in favor of plaintiff and against either defendant. When these demurrers were overruled the owners adduced their evidence and rested.

Thereupon, over strenuous objection of the owners, the city offered and was allowed to introduce in evidence its Ordinance No. 17826 dated August 11, 1921. In substance Section 1 of this Ordinance grants the Elks Benevolent and Charitable Association (conceded to be the former owners of what is now the Huron Building) permission to excavate under the sidewalk space in front of its property; to erect a suitable sidewalk over such excavation and to make necessary openings therein in a manner satisfactory to the city; and to use the space so excavated in the erection, maintenance and operation of a building to be constructed, therein described. Section 2 thereof provides that in consideration of such grant and permission the Elks Benevolent and Charitable Association agrees to be bound to hold the city harmless from all loss or damage either to person or property by reason of the excavations made in the streets, either in construction of said improvement or the maintenance thereof in the future. Sections 3 and 4 of such Ordinance have no bearing on the issues and need only be mentioned.

Upon admission of the foregoing evidence, and without introduction of any other evidence, the city rested its cause. Thereafter, and before the case was submitted to the jury, it requested permission to file an amended answer to conform with the proof and, when this request was granted, filed a supplemental answer instanter, reciting that at all times alleged in plaintiff's petition, there existed between the city and the present owners of the Huron

Building and all of their predecessors in title a contract in the form of an Ordinance; which was made a part of such pleading by reference, wherein the owners of the Huron Building contracted and agreed to save the city harmless in the event that any person was injured by reason of the owners of the Huron Building neglecting to maintain the sidewalk in front of such building in a reasonably safe condition for pedestrian travel.

Following the foregoing proceedings the owners moved for a directed verdict. Upon the overruling of this motion the trial court read its written instructions, several of which were objected to, to the jury and then submitted the cause to that body which, in due time, returned its general verdict, finding for the plaintiff and against the owners and for the city and against the plaintiff, along with its answers to special questions submitted by the court at the time the cause was turned over to it for its consideration.

The owners then filed a motion to set aside the special findings of the jury; a motion for judgment on such special findings; and a motion for a new trial, while the plaintiff filed a motion for judgment against the city on the answers to the special findings; a motion for judgment against the city *non obstante*; and a motion for a new trial against the city. After overruling all of the foregoing motions the trial court rendered judgment in accord with the general verdict. Whereupon the owners gave notice they were appealing from the judgment, the order overruling their demurrer to plaintiff's evidence, the order overruling their motion for a directed verdict, and all adverse rulings on their post trial motions. Later the plaintiff gave notice of her cross-appeal from the portion of the judgment rendered against her and in favor of the city and from all adverse rulings on her post trial motions. Subsequently plaintiff's motion to dismiss her cross-appeal in this court was allowed. Hence the only issues now subject to review are those raised by the owners on their appeal.

Since the city is no longer a party interested on appellate review no confusion will result by referring to the owners as appellants and plaintiff as appellee throughout the remainder of this opinion.

Although one of several, appellants' first specification of error is that the trial court erred in overruling their demurrer to the appellee's evidence. For that reason, and another to be presently disclosed, we turn directly to the question thus raised and will briefly review the state of the record in the court below at the time of such ruling.

About 1921 the Elks Benevolent and Charitable Association erected an eleven story building on the east side of Seventh Street between Minnesota Avenue and Ann Avenue, facing west on Seventh Street, in Kansas City, Kansas. At or about the same time it constructed a sidewalk in front of such building. In connection with these improvements an excavation was made under the sidewalk, as a part of the basement of the building, and two iron doors were placed in the sidewalk so materials and supplies could be taken into the basement and the areaway or vault made available for storage purposes. The building remained in the condition indicated until 1948 when it was purchased from the Bondholders' committee by the appellants who took over the building and continued to use the area under the sidewalk.

The only evidence relating to repairs in the sidewalk came from the lips of a witness who, for eighteen years prior to 1951, had acted as the manager of the building in question. He testified that in 1933 or 1934 such building was owned by the Bondholders' committee which repaired the sidewalk in an area between the two iron doors and the west wall of the building by taking out some broken glass blocks, over a part of the sidewalk, and replacing with concrete, in a workmanlike manner, a square space where the blocks had been located. In response to a leading question as to whether, during the time he was manager of the building, he maintained and repaired the sidewalk over the basement area in an effort to keep it reasonably safe for pedestrians that had to use it, this witness answered "yes" and added "we paid for and did all the work that was done to keep the sidewalk in repair." However, he recalled making no repairs other than those above mentioned and it may be stated appellee adduced no evidence whatsoever tending to show that any change or repairs in the basement or sidewalk were made by appellants after they purchased the building in 1948.

On September 21, 1953, appellee who had just left the entrance lobby of the building, after having shopped in one of its rental business establishments, stepped into an irregularly shaped hole, located some place near the center of the heretofore mentioned repaired surface of the sidewalk and about two feet out from the front of the building. Testimony as to the size of this hole, which only one witness claimed to have seen prior to the involved accident, was highly conflicting but there was evidence that it was from 2 to 2½ inches in depth at its deepest part, from 4 to 5 inches wide, and 7 to 8 inches long. The only testimony tending to show what

caused this hole in the surface of the area in question came from a business man, having an office near the building, who, in response to a request that he describe the hole, stated that it looked to him like it was caused by "kind of an erosion of the concrete from water or something there." In response to a question whether it had washed out or worked out this same witness answered "crumbled out."

At this point it should be noted the record discloses no evidence which shows, or under the rule of liberal construction even tends to show, (1) that the hole in which appellee fell was caused by the use or maintenance of the iron doors in the sidewalk or by the use or maintenance of the areaway, vault, excavation and/or basement under the sidewalk; (2) that any act of appellants caused the existence of such hole or that the existence and use of the areaway under the sidewalk, or the existence and use of elevator doors in the sidewalk, caused the hole in the sidewalk; and (3) that appellants, or for that matter their predecessors in title, had ever entered into any contract of any nature whereby they or their predecessors in title had agreed to assume liability for injuries sustained by a pedestrian as a result of accidents caused by defects in such sidewalk.

Finally it should be stated appellee's testimony, and that of other witnesses, was sufficient to sustain her position that she fell as a result of stepping in the hole and thereby sustained the injuries claimed in her petition. Indeed in a general way it may be stated that if it can be held, as a matter of law, that an abutting property owner with rights of user is liable, under conditions and circumstances such as have been heretofore related, to a pedestrian for having failed to repair a sidewalk appellee's evidence was sufficient to withstand a demurrer lodged against it on the ground it failed to establish a cause of action in her favor.

Having related the salient facts on which the rights of the parties depend we direct our attention to the law governing their application, pausing to point out that, although they have widely divergent views as to their force and effect, the parties, for all practical purposes, rely on the same Kansas cases to support their respective positions. Among these are *Jansen v. City of Atchison,* 16 Kan. 358, and *Dixon v. Railway Co.,* 104 Kan. 404, 179 Pac. 548, rehearing denied in 104 Kan. 787, 180 Pac. 733, long recognized by this court as leading cases on the subject of liability of both the city and abutting property owners for defects in sidewalks. Others

are *Spear v. City of Sterling,* 126 Kan. 314, 267 Pac. 979, *Pierce v. Jilka,* 163 Kan. 232, 181 P. 2d 330; *Smith v. Krebs,* 166 Kan. 586, 203 P. 2d 215. We are not disposed to labor these decisions, all of which are available in our reports to readers of this opinion. It suffices to say that, after a careful analysis of all that is there said and held, we are convinced, that whatever the rule may be elsewhere, the established law of this state is that an abutting property owner is not liable for defects in a sidewalk, even though he is using the area under such sidewalk by permission of the city, unless the defects complained of are created by his own negligence or bear causal relationship to his use of the area under the sidewalk; and that so construed such decisions, when applied to the existing facts and circumstances, require a conclusion the trial court should have sustained the appellants' demurrer to appellee's evidence.

In addition to those above mentioned the only other Kansas cases on which appellee relies to sustain her position the ruling on the demurrer to her evidence was proper are *Street Rly. Co. v. Stone,* 54 Kan. 83, 37 Pac. 1012; *Adams v. Electric Railway Co.,* 95 Kan. 781, 149 Pac. 700; *City of Topeka v. Sash & Door Co.,* 97 Kan. 49, 154 Pac. 232; *City of Fort Scott v. Penn Lubric. Oil Co.,* 122 Kan. 369, 252 Pac. 268; *City of Topeka v. Sherwood,* 39 Kan. 690, 18 Pac. 933, and *Jenree v. Street Railway Co.,* 86 Kan. 479, 121 Pac. 510.

In a general way it can be said the first four of the last cited cases deal with situations where the abutting property owners either placed an obstruction in the street or sidewalk or his active negligence caused the defective condition involved; the fifth is a case where the city alone was sued because of injuries sustained from a defective sidewalk; and in the sixth recovery against the abutting property owner was allowed because of an obligation contractually assumed. Under the existing facts and circumstances such cases are clearly distinguishable, hence they cannot be here regarded as controlling.

In an effort to avoid the force and effect of the conclusion heretofore announced appellee directs our attention to the Ordinance introduced by the city after the ruling on the demurrer, over the objection of appellants. There are at least two answers to all contentions advanced by appellee to the effect the Ordinance warrants a contrary conclusion. In the first place it was not relied on by appellee in her case in chief and the action of the city, whose in-

terests were adverse to appellants, in introducing it late in the trial is not binding on appellants in determining the sufficiency of appellee's evidence at the time of the ruling on the demurrer. In the next the Ordinance does not purport to require the city to maintain the sidewalk or assume liability for defects therein. Indeed, passing questions as to whether the Ordinance can be construed as binding on subsequent owners, the most that can be said for it is that owners of the building were to save the city harmless from all damages either to person or property by reason of *the excavations* made in the streets, either in the construction of such improvement or the maintenance thereof in the future.

Next it is urged the fact their predecessors in title had repaired the sidewalk on at least one occasion made appellants liable for subsequent defects. In *Dixon v. Railway Co.,* supra; we held that liability of the owner of abutting property to persons injured by reason of the defective condition of a sidewalk does not arise from his having previously repaired defects.

Finally it is argued that appellants were in control of the sidewalk. The evidence does not sustain appellee's position on this point. Moreover, our decisions do not support such a contention. They hold that a city has charge and control of the public streets within its limits (See *Smith v. City of Leavenworth,* 15 Kan. 81, 83; *Jansen v. City of Atchison,* 385, supra; *Smith v. Krebs,* 588, supra.).

What has been heretofore stated and held compels a reversal of the judgment. For that reason it is neither necessary nor required that we here consider or discuss the divers other claims of error made by appellants with respect to the status of that decree.

The judgment is reversed with directions to sustain appellants' demurrer to appellee's evidence.