EARLENE CHAMBERS *v.* THE CITY AND COUNTY
OF HONOLULU, A MUNICIPAL CORPORATION *v.*
BERNICE MIYASATO.

No. 4388.

OCTOBER 7, 1965.

TSUKIYAMA, C.J., CASSIDY, WIRTZ,
LEWIS AND MIZUHA, JJ.

OPINION OF THE COURT BY MIZUHA, J.

On October 31, 1958, at or about 7:00 P.M., plaintiff-appellee Earlene Chambers, while walking on the road shoulder on the mauka (north) side of Kapiolani Boule-

vard on which the Donald Duck Drive Inn at 2840 Kapi-olani Boulevard fronts, fell and injured herself because of a depression or hole in the pavement.

The plaintiff filed suit on September 29, 1959, against the defendant-appellant, City and County of Honolulu, which in turn filed a third-party complaint against the third-party defendant-appellee, the owner of Donald Duck Drive Inn, Bernice Miyasato. Plaintiff did not seek any relief from the third-party defendant. At the conclusion of the trial, appellant submitted the factual issues as to negligence and liability of the third-party defendant to the trial court along with the issues of law. Plaintiff's claim against defendant-appellant went to the jury, which returned a verdict for the plaintiff-appellee against the defendant-appellant in the sum of $15,000 in special and general damages. The trial court subsequently ruled in favor of the third-party defendant against the third-party plaintiff. Judgment in favor of plaintiff and third-party defendant was entered May 25, 1962, from which the defendant-appellant appeals.

Plaintiff-appellee admits that she knew of the defects in the road shoulder, having lived in the area for four months prior to the accident at an apartment located at 2832 Kapiolani Boulevard adjacent to the drive-inn. On the particular evening when plaintiff fell, she was unable to see the area under her feet as she walked since the lighting was not very good. She testified that "it is the only place to walk, so that is where I was walking to mail a letter." She was wearing black low-heeled sandals with a strap, and had stopped wearing high heels because of the holes in this area.

The road shoulder abutting the Donald Duck Drive Inn is owned by the defendant-appellant, the City and County of Honolulu, and about 50 to 100 vehicles use the

road shoulder daily either as an ingress and egress to and from the drive-inn or to stop and turn around.

## PART I

Appellant contends that the trial court erred in denying its motion for a directed verdict on the ground that the appellee was guilty of contributory negligence as a matter of law.

The record indicates that the question of contributory negligence arises from a set of facts from which reasonable men might draw different conclusions or inferences. The basis for determining whether there was sufficient evidence to submit the issue of contributory negligence to the jury is set out in *Young* v. *Price,* 47 Haw. 309, 313, 388 P.2d 203, 206; *Young* v. *Price,* 48 Haw. 22, 24, 395 P.2d 365, 367, as follows: "[O]n motions for a directed verdict, the evidence and the inferences which may be fairly drawn from the evidence must be considered in the light most favorable to the party against whom the motion is directed and if the evidence and inferences viewed in that manner are of such character that reasonable persons in the exercise of fair and impartial judgment may reach different conclusions upon the crucial issue, then the motion should be denied and the issue should be submitted to the jury."

Plaintiff's testimony was to the effect that despite the fact that she took the necessary precautions on account of the holes in the area, she fell because the holes blended with the black top surface and the inadequate lighting made it impossible to see all of them at night. This was an urban area. There was no other place to walk. The contention that a verdict should have been directed is not based on any theory that, as a matter of law, it was imprudent for a pedestrian to attempt to pass this way

at night. We cannot say that reasonable persons in the exercise of fair and impartial judgment may not reach different conclusions as to whether this plaintiff exercised the care which a reasonably prudent person would exercise under the circumstances. *Martin* v. *Gilmore,* 358 S.W.2d 462, 466-67 (Mo. 1962). Where "reasonable men might differ on the facts or the inferences which may be reasonably drawn from the facts, the question of negligence is left to the jury under proper instructions, * * *." *Carreira* v. *Territory,* 40 Haw. 513, 517. This is equally true where contributory negligence is the issue. *Young* v. *Price, supra; Ferrage* v. *Honolulu R. I. & L. Co.,* 24 Haw. 87, 91. The trial court did not err in its refusal to direct a verdict in defendant's favor.

Appellant's third specification of error reads:

"3. The Trial Court erred in refusing over objection Appellant's instructions 27, 28,[1] 29, 30, 31, 32, 33 and 48. (Trial Record pp 249, 250). Said instructions state in essence that an abutting landowner who makes special use of a sidewalk for his own benefit, owes a duty of due care to maintain the area in a reasonably safe condition for pedestrians travelling over the area."

This specification of error does not properly present any matter for consideration and disposition by this court. It violates Rule 3(b)(4) of the rules of this court which requires that the specification shall set out the part referred to *totidem verbis* together with the objections urged at the trial. *Kealoha* v. *Tanaka,* 45 Haw. 457, 463, 370 P.2d 468, 472; *You Goo Ho* v. *Dr. Edmund T. K. Ing,* 43 Haw. 330, 332.

Furthermore, we question whether the abutting own-

---

[1] The record indicates that Appellant's Instruction No. 28 was withdrawn and No. 48 substituted.

er's liability was of any significance in relation to the question submitted to the jury, which concerned solely the defendant-appellant's liability to plaintiff. In any event, we have reviewed the instructions and find they are inapplicable to the facts and not responsive to the evidence herein. They are incomplete, and ambiguous, and would have confused and misled the jury. *Collins* v. *Shishido,* 48 Haw. 411, 405 P.2d 323, *rehearing denied* 48 Haw. 538, 405 P.2d 338. (See discussion on court's findings and "special use doctrine" in Part II of this opinion.)

## PART II

As to the third-party defendant, appellant specifies as error the trial court's findings of fact, conclusions of law and judgment that she was not negligent in the maintenance and care of the road shoulder fronting her business.

Appellant argues that the road shoulder took the place of a sidewalk and was being used by third-party defendant as an entrance to the drive-inn as well as a parking place for her patrons. This, it is contended, constituted a special use making the abutting owner liable for any injuries sustained from defects of the road shoulder, citing, among others, *Hughes* v. *City of New York,* 236 N.Y.S.2d 446; *Wylie* v. *City of New York,* 286 App. Div. 720, 146 N.Y.S. 2d 207; *Prange* v. *McLaughlin,* 115 N.J.L. 116, 178 Atl. 782. The cases relied on by the appellant where the defect was caused by special use are distinguishable on the facts. Failure to properly maintain specially constructed driveways, or permitting trucks to drive over a sidewalk not designed for such purpose, formed the basis of a finding of negligence in the foregoing cases.

In the absence of a statute or ordinance, the owner or occupant of land abutting on a public sidewalk does not, solely by reason of being an abutter, owe to the public a

duty to keep the sidewalk in a safe condition. *Winston* v. *Hansell,* 160 Cal. App. 2d 570, 325 P.2d 569; *Sexton* v. *Brooks,* 39 Cal. 2d 153, 245 P.2d 496; *Major* v. *Fraser,* 78 Nev. 14, 368 P.2d 369; *City of Bessemer* v. *Brantley,* 258 Ala. 675, 65 So. 2d 160. See *Re Taxes Victoria Ward,* 33 Haw. 235.

But an abutting owner of property may be liable for injuries to users of the sidewalk resulting from a defective or dangerous condition thereof which is created by or arises from his own acts or conduct constituting negligence or a misuse under the circumstances. *Barker* v. *Kroger Grocery & Baking Co.,* 107 F.2d 530, *cert. denied,* 309 U.S. 656; *Belk-Mathews Co.* v. *Thompson,* 94 Ga. App. 331, 94 S.E.2d 516; *Clair* v. *City of Kansas City,* 180 Kan. 409, 304 P.2d 468; *Smith* v. *City of Corning, New York,* 14 App. Div. 2d 27, 217 N.Y.S.2d 149; *Rollins* v. *Satterfield,* 254 S.W.2d 925 (Ky. 1953).

Where a sidewalk is specially constructed for the benefit of the abutting property or serves a use independent of the ordinary use for which the sidewalk was originally designed, the owner or occupant of the abutting property owes a duty to the public to maintain the sidewalk in a reasonably safe condition, and hence he may be liable for a defective or dangerous condition created by such special use of the sidewalk. *Barker* v. *Kroger Grocery & Baking Co., supra; Merriam* v. *Anacostia Nat'l Bank,* 101 App. D.C. 190, 247 F.2d 596; *Hippodrome Amusement Co.* v. *Carius,* 175 Ky. 783, 195 S.W. 113; *Hughes* v. *City of New York, supra.*

But, there are cases in which courts have held that the abutting owner is not liable although the sidewalk was specially used by customers of the business. In *Adams* v. *Grapotte,* 69 S.W.2d 460 (Tex. Civ. App. 1934), the court stated at page 462: "It is true that sidewalks are built primarily for pedestrians, and not for vehicular traffic,

but it does not follow that vehicles have not the same right to pass over them as a means of access to places of business abutting thereon that pedestrians have to walk longitudinally upon them." In affirming, the Texas Supreme Court added: "Defendant committed no unusual, wrongful, or unlawful act which caused the hole or depression here involved. It certainly was not unusual, wrongful, or unlawful for him to conduct his garage business in the way that he did. It is true that many cars passed over this sidewalk as his invitees, but such fact simply shows the degree or quantity of use—not an unusual use in a legal sense, and not a wrongful or unlawful use." *Grapotte* v. *Adams,* 130 Texas 587, 590, 111 S.W.2d 690, 691-92; *City of Bessemer* v. *Brantley, supra.* See *Lee* v. *City of Baton Rouge,* 243 La. 850, 147 So. 2d 868; *Winston* v. *Hansell, supra.*

Appellant has not complied with the requirements of Rule 3(b) (4) of this court which states: "In all cases, when findings are specified as error, the specification shall state as particularly as may be, wherein the findings of fact and conclusions of law are alleged to be erroneous." Appellant does not specify any particular finding as erroneous, nor does it cite any portion of the evidence which conflicts with the findings of fact of the trial court. Appellant assumes that the "special use doctrine," which was invoked to find third-party liability under the facts in *Hughes* v. *City of New York, supra,* and *Wylie* v. *City of New York, supra,* and other similar cases, is applicable and therefore the trial court's conclusion of law from the facts was erroneous.

It is unnecessary for us to determine the ramifications of liability under the "special use doctrine," since the trial court did not find that the road shoulder was constructed nor was it used specially for the benefit of the third-party defendant. The trial court found, not only that the patrons

of third-party defendant crossed the road shoulder to gain access to third-party defendant's place of business, but also that the road shoulder was used by members of the general public as a place to stop, park their vehicles, or turn around. The trial court was unable to find any evidence that "the third party defendant, Bernice Miyasato, placed any obstructions in the City-owned area, or made any alterations for her use or benefit or that she or her employees or any agents or invitees of hers caused the depression or hole in the pavement which caused plaintiff's injuries."

There is no evidence in the record that the third-party defendant or her predecessors in interest specifically graded and paved the road shoulder in a manner suitable to a driveway for her special use. *Cf., Hughes* v. *City of New York, supra.* Likewise, there is no evidence that the defective condition resulted solely from the use of the area by the patrons of the drive-inn. The general public also used it as indicated by the third-party defendant in her testimony.[2]

After a careful review of the evidence, we cannot say that the use of the road shoulder was a special use for the third-party defendant. The findings of the trial court are fully supported by the evidence and they "shall not be set aside unless clearly erroneous." H.R.C.P., Rule 52 (a) ; *Filipino Fed'n of America, Inc.* v. *Cubico,* 46 Haw. 353, 380 P.2d 488; *Peine* v. *Murphy,* 46 Haw. 233, 377 P.2d 708. Based on such findings the trial court properly concluded

---

[2] "Q [By Appellant's Counsel] Could you tell us, back in October of 1958, the average number of vehicles that drove into your lot each day?

"A [By Third-Party Defendant] You mean the hours that I opened until I closed?

"Q Yes.

"A It is awfully hard for me to say that. The reason why is that the people that do go by they use that as a place of turning also, and how many cars that come in there I really cannot say." (Tr. p. 206)

that the appellant was not entitled to judgment against third-party defendant.

Appellant's fourth specification of error was abandoned during argument.

Affirmed.

*David H. C. Lee,* Deputy Corporation Counsel (*Stanley Y. F. Ling,* Corporation Counsel, and *Raymond J. Tam,* Deputy Corporation Counsel, with Corporation Counsel on reply brief), for defendant-third party plaintiff-appellant.

*Yoshio Shigezawa* (*Walter G. Chuck* on the brief) for third party defendant-appellee.

*Harriet Bouslog* (also on the brief) for plaintiff-appellee.

---

DISSENTING OPINION OF TSUKIYAMA, C. J.

On the basis of the evidence in this case, I find it impellent to express my disagreement with the court in respect to the specific issue of contributory negligence.

The position which I take is compatible with the theory advocated and advanced by the majority in *Young v. Price,* 47 Haw. 309, 388 P.2d 203, and by the minority in the rehearing of that case, 48 Haw. 22, 395 P.2d 365.

Upon examination and analysis of the evidence, I am persuaded to the conclusion that the instant case is perceptibly much stronger than the *Young* case insofar as it bears on the issue of contributory negligence. Here, the testimony of plaintiff was that she had full knowledge for a period of four months of the existence of the road-shoulder defects which allegedly caused her to fall and injure herself, and that because of such awareness, when she left her home on the particular evening, she deliberately wore low-heeled sandals. Plaintiff further testified that

she walked out at night "very infrequently," but admitted she did walk in front of the Donald Duck about twenty-six times at night.[1]

There is no quarrel with the general accepted rule of law that where a motion for a directed verdict is interposed, if the evidence and inferences which may be fairly drawn therefrom are such that reasonable persons in the exercise of fair and impartial judgment may reach different conclusions upon the issue of negligence or contributory negligence, the motion should be denied and the issue submitted to the jury. Such pronouncement has been repeatedly made by this court. The difficulty which has confronted the courts lies in the proper application of this principle to the peculiar facts of each case. Human judicial tribunals are not endowed with the power of divina-

---

[1] Tr. pp. 189-190:

"Q You told us, Mrs. Chambers, that ever since you moved to 2832 or 2838 Kapiolani Boulevard that you were aware of the holes in the pavement, is that correct?

"A Yes, I was.

"Q And that is for approximately four months?

"A Yes. That is why I quit wearing high heels.

"Q On how many occasions would you say you walked in front of Donald Ducks to get to and from your property?

"A I walked there quite frequently but very infrequently at night.

"Q Very infrequently at night?

"A Yes.

"Q How many times is very infrequently?

"A Not very often.

"Q How many times?

"A I don't know how many times but not once a night.

"Q Fifty?

"A I lived there four months. I don't know if I did go out walking very often at night.

"Q Fifty times too much?

"A Yes, I would say so.

"Q About 25?

"A That is better. Probably that.

"Q Twenty-six?

"A All right, 26.

"Q And you were quite aware of the holes and the lumpty condition?

"A Yes, I was.

"Q That night were you paying any attention to the holes?

"A Yes, I was but it was dark and the black top was black, and there were so many holes that I fell in one."

tion and cannot with mathematical precision predetermine whether or not reasonable persons viewing the same state of facts may reach different conclusions. The element of speculation is inescapable.

Courts are, therefore, prone to take the easy way out, so to speak, by laying undue emphasis upon the theory that reasonable men might reach different conclusions.

Obviously, the courts in every jurisdiction have been plagued by the difficulty of resolving the factual aspects of the question of contributory negligence as indicated by the inextricable contrariety of rulings in respect to the application of the law governing the submission of the issue to the jury.

In the case at bar, the record does not disclose any evidence as to who constructed the roadshoulder which leads to the parking area under the control of the Donald Duck Drive Inn. Ostensibly, the opening from Kapiolani Boulevard, a public highway, into the area is to accommodate the customers by serving as a means of ingress and egress to and from the restaurant. Incidentally, it appears that the motoring public also enters the area for the purpose of making temporary stops or turn-arounds. There is a dearth of evidence that defendant, the City and County of Honolulu, constructed the roadshoulder or even tended the same; nor is there any evidence that any other person has been injured at or near the same place or that any complaint has even been made to the city. While the absence of such evidence does not as a matter of law affect the degree of care required of a city to keep public roads, sidewalks and roadshoulders in a reasonably safe condition, it does bear upon the question of whether or not it had actual or constructive notice of defects.

The city government owns hundreds of miles of sidewalk areas, both improved and unimproved and interspersed with roadshoulders and private driveways. It

would be an unconscionable burden on the city to be required to keep them immaculately free from all holes and depressions. A municipality is not an insurer against accidents upon public roadways and byways.

Upon the record it appears that the instant case proceeded on the issue, among others, of whether or not defendant was negligent in not maintaining the particular roadshoulder in a reasonably safe condition. Evidently, the parties did not overtly controvert the question of defendant's knowledge, actual or constructive, of the alleged defects but left the same to inferences drawn from the general circumstances disclosed by the evidence.

It is well established that, though the city disclaims actual knowledge, the city can be charged with constructive knowledge or notice of defects. Where defects patently dangerous are allowed to remain unattended for an unreasonable length of time, the city must answer for the consequences of the neglect. Where, however, as in this case the alleged defects consisted of visible cracks on a roadshoulder used primarily to serve the customers of a private restaurant and where the person claiming damages for personal injuries admits that she had full knowledge of the defects over a period of four months, the conclusion is impelling that her own inattention, tantamount to negligence, contributed proximately to her fall and consequent injuries. It is as much a pedestrian's duty to exercise reasonable precaution to avoid injury as it is the city's to keep public areas in a reasonably safe condition.

The principle of law which governs the degree of care required of defendant applies equally to plaintiff. The degree of care as a matter of law does not change, but the amount of care necessary to constitute ordinary or reasonable care varies with the particular factual circumstances of each case. See *Kellett* v. *City and County*, 35 Haw. 447.

It is noted that plaintiff, here, lived in an apartment house adjacent to the Donald Duck Drive Inn and that on the particular evening when she left home wearing low-heeled shoes, the weather was dry and the street light near the roadshoulder was on. It is also observed that the exhibits in evidence show that the entire length and breadth of the roadshoulder was not bespattered with holes, but there were visible holes or cracks scattered over a few spots and the remaining areas were patently free from defects.

As stated, in negligence cases the degree of care required remains fixed, the law being predicated upon the reasonably prudent man rule. But the amount of care required varies for it is a fair presumption that a reasonably prudent man with a background of familiarity with particular hazards existing on a roadway would exercise a greater amount of care by circumventing the known hazardous spots. There is no indication that plaintiff, here, exercised or endeavored to exercise any greater amount of care. She testified: "Well, I was walking along Kapiolani Boulevard on the shoulder of the road where the sidewalk would be if there was one. I walked around the fence that separated the apartment house from Donald Duck Drive Inn, and there were a lot of cars in the Drive Inn, and I walked in a line—I was behind the cars on the shoulder of the road, and I caught my foot in the hole and fell, and I hit my head and my side."

The foregoing observation finds support in the fact that the trial court, seemingly concerned at the state of the evidence, instructed the jury as follows: "A pedestrian traveling at night, with knowledge of defects in the way, is required to use care in proportion to the danger; and when he has a choice of a safer way, due care for his own protection requires that it should be taken."

It is my view that the issue of plaintiff's contributory

negligence should have been resolved by the court as a matter of law and that the rejection of defendant's motion for a directed verdict was error. Accordingly, I dissent from that portion of the court's holding that the trial court did not err in its refusal to direct a verdict in favor of defendant. I concur, however, in the court's determination of the remaining issues involved in this appeal.

---

DISSENTING OPINION OF WIRTZ, J.

I join with the Chief Justice in registering my dissent with the opinion of the court on the issue of contributory negligence. The facts in this case compel the conclusion that plaintiff was contributorily negligent as a matter of law under the principles enunciated in *Young* v. *Price*, 47 Haw. 309, 388 P.2d 203, and reiterated in the dissent on the rehearing of that case in 48 Haw. 22, 395 P.2d 365.

It thus becomes unnecessary to consider the remaining issues presented under this appeal.